## LAKIN v. DOLLY.

### SAME v. ROBERTS et al.

#### (Circuit Court, N. D. California.  March 23, 1891.)

#### Nos. 10,596, 10,630.

1. PUBLIC LANDS—PATENTS—VALIDITY.

   A land patent from the government of the United States, issued with all the forms of law, may be shown to be void by any extrinsic evidence which is capable of showing a want of authority for the issue of the patent.

2. MINING CLAIM—PATENT—VALIDITY.

   By the provisions of Rev. St. § 2320, the land office has no power to issue a patent to a mining claim extending more than 300 feet in width on each side of the middle of the lode. Such patent, if issued, is absolutely void, not merely voidable, as to such excess, and can be collaterally attacked in an action of ejectment; but one patent may embrace two or more claims on the same lode. Smelting Co. v. Kemp, 104 U. S. 636, followed.

3. LANDLORD AND TENANT—ESTOPPEL TO DENY TITLE.

   In 1876, B. entered and claimed for agricultural and building purposes certain public lands, filing his claim in the county records, but acquiring no title from the United States. A patent to a mining claim, including this land, had been previously applied for, and was subsequently granted, but was void as to the lands in question. In 1883 nominal rents of from one to five dollars were paid to the patentee by assignees of B.'s interest, and other persons, after 1883, entered on similar land, with the permission of the patentee, or with the understanding that he did not object so long as his rights were not interfered with. In 1889 one claiming under the patentee's title notified such occupants to pay rent, to purchase the land, or to quit. Held, in an action of ejectment, that the occupants had acted under a mistake as to the law in regard to the patentee's title, and that there was no relation of landlord and tenant sufficient to estop them from denying such title.

4. SAME—EVIDENCE—PAYMENT OF TAXES.

   A mining company paid state and county taxes from 1878 to 1888 on certain lands covered by its patent, but in respect to which the patent was void. After 1883 certain occupying claimants paid taxes on their improvements. Held, in an action of ejectment by the mining company against the occupying claimants, that the payment of taxes was irrelevant and immaterial to establish title in either party.

At Law.  Actions of ejectment by William H. Lakin against O. B. Dolly, (No. 10,596,) and against J. H. Roberts and others, (No. 10,630.) In cause No. 10,596 judgment was heretofore given for plaintiff. It is now resubmitted on an agreed statement of facts. Cause 10,630 is submitted on the same facts.  Judgment for defendants in both cases.

H. L. Gear, for plaintiff.
Goodwin & Goodwin, for defendants.

HAWLEY, District Judge.  These cases are actions of ejectment. The Dolly case is submitted upon a stipulation—

"That defendant may move to set aside the judgment, and for a new trial of the above-entitled action, without previous service of notice of intention, and without showing of facts constituting surprise or excusable neglect as a ground of the motion; it being agreed that if the facts hereinafter stipulated do, as matter of law, show a right of the defendant to defend the action successfully

as against the plaintiff, under the pleadings, defendant is entitled to a new trial of said action upon the ground of surprise and excusable neglect; and that, if such right so appears, the said judgment may be set aside, upon condition of payment of the costs of plaintiff included in said judgment; and that judgment then be rendered in favor of defendant for his costs; but that if said facts do not show such right of successful defense, as matter of law, the motion of defendant is to be denied, and the verdict and judgment in favor of plaintiff are to be and remain final."

The Roberts case is submitted, by agreement of counsel, upon the agreed statement of facts filed in the Dolly case.

From the agreed statement of facts and the various exhibits referred to, the following, among other facts, are made to appear, viz.: That plaintiff holds the title to the premises in controversy that was acquired by the patent of the United States to the Mammoth Gold Mining Company. That the lands in controversy are mineral lands, and are situated within the Jamison quartz mining district, in Plumas county, and embrace the lands upon which the town of Johnsville is situate. That the patent issued to the Mammoth Gold Mining Company on the 18th day of May, 1877, although it purports upon its face to be issued in pursuance of the Revised Statutes of the United States, upon an entry made by the Mammoth Company March 17, 1877, was applied for by John B. McGee and James M. Thompson, under the law, of 1866, on August 30, 1867. That the patent embraces two separate locations, and conveys 4,100 feet of a gold-bearing quartz lode, with 252.95 acres of land. That the actual trend of the extension of the Mammoth lode upon the patented ground is unknown. That the lode as marked on the patent, as well as located and fixed on the surface of the land, is in a straight line along the west or northwest boundary of said patented tract, and is within 50 feet of said line. That the surface tract covered by the patent, except said 50 feet, is on the east or southeast side of said lode, and extends about three fourths of a mile therefrom. That the written laws adopted in 1851 by the miners of the Jamison quartz mining district, governing the location of quartz claims therein, made no provision for the location of surface ground in connection with the quartz location in excess of 100 feet on each side of the lode; nor was there any law, usage, or custom authorizing the location or occupancy of more than 100 feet of surface ground on each side of the lode. That the—

"Quartz miners of Jamison district who opened and worked mines on Eureka mountain actually occupied such portion of public land as they chose for the purpose of working their mines, the extent of such occupation not being a matter of defined custom, but of actual possession; but * * * there was no actual possession of the land on which the village of Johnsville is situated, except the road leading across the same from the Mammoth mine to the Mammoth mill and to Jamison City."

—That, in 1867, McGee and Thompson procured a survey of the Mammoth claim and extension, and of the exterior boundaries of the surface ground, and had a diagram thereof made, and thereupon, on the 30th day of August, 1867, they posted on said Mammoth claim the following notice:

"The undersigned give notice that they intend to apply for a patent for the vein or lode set forth in the above diagram, called the 'Mammoth Quartz

Claim,' situated in the Jamison mining district, county of Plumas, California, and now post this notice on a conspicuous part thereof.

"Dated on the ground this 30th day of August, 1867.

"John B. McGee.
"Jas. M. Thompson."

—That on the 7th day of September, 1867, they published in a local newspaper, for the period of 90 days, the following notice, viz.:

"The undersigned give notice that they intend to apply for a patent for the vein or lode known as the 'Mammoth Quartz Claim,' situated in the Jamison mining district, county of Plumas, state of California, and now post this notice on a conspicuous part thereof: Commencing at an iron pin drilled into a rock on the line dividing the Mammoth claim from the Eureka claim, and running thence for the center of the vein northeast 4,100 feet, and including the land between the lode and Jamison creek for working purposes.

"Dated on the ground this 30th day of August, 1867.

"John B. McGee.
"James M. Thompson "

—That on the 17th day of June, 1876, one John F. Banks entered upon and claimed 20 acres of land upon which the town of Johnsville is now situate, and located the same for building and agricultural purposes. That his claim thereto was recorded upon the records of Plumas county prior to the issuance of the patent to the Mammoth Company. That by certain mesne conveyances this tract of land has become vested in the defendants. That for more than 10 years last past the town of Johnsville has been the center of trade and business of that section of country, with a population of over 200 persons, and laid off into streets, lots, and blocks. That no portion of this tract of land occupied by defendants is within 1,000 feet of the lode described in the patent. That said land has never been sectionized by the government of the United States, nor in any manner surveyed by the government of the United States, other than by the survey made in the proceedings to obtain the patent to the Mammoth quartz lode under which plaintiff claims title. That in the summer of 1883, for the first time, the Sierra Buttes Mining Company, from which company plaintiff claims title, demanded of the citizens of Johnsville that they should pay nominal rent to the company for the land occupied by them as town lots. That the defendant Dolly, and several of the defendants in the Roberts case, paid from one to five dollars each, and no further payments of rent from them were ever demanded until the spring of 1889. That the other defendants in the Roberts case, who entered upon the land subsequent to 1883, either obtained permission of said company, or entered the land with the understanding that the Sierra Buttes Gold Mining Company did not object to the occupying of the town lots as long as the enjoyment of its rights in the premises were not interfered with. That the lands embraced in the patent were assessed for state and county purposes from 1878 to 1888 to the mining company, and it paid the taxes thereon. That after 1883 the defendants in the respective actions were assessed for taxes on their respective improvements on the land occupied by them, and the taxes so assessed were paid by them. That in the spring of 1889 the plaintiff, Lakin, after he had acquired a judgment against the Sierra Buttes Gold Mining Company, enforcing a trust in the portion of the patented ground which includes the premises in controversy, notified

the defendant Dolly and the defendants in the Roberts case that they must either pay rent for the land occupied by them, purchase said land, or quit the premises and move their improvements therefrom within 30 days. That defendants neglected and refused to perform either of said requirements, and remained in the possession of the premises.

Upon the foregoing facts the contention of defendants is that under the provisions of sections 2318, 2320, Rev. St. U. S., the patent issued to the Mammoth Gold Mining Company is void as to all that portion of the surface ground on the east or southeast side of the quartz lode in excess of 300 feet from the center of the lode. The contention of the plaintiff is that the land department had jurisdiction to pass upon all questions of fact, and to issue the patent; that its action cannot be collaterally attacked in an action of ejectment. I had occasion, in Rose v. Mining Co., 17 Nev. 25, 27 Pac. Rep. 1105, (affirmed in 114 U. S. 576, 5 Sup. Ct. Rep. 1055,) and in the recent case of Whitney v. Taylor, 45 Fed. Rep. 616, to thoroughly examine the question as to when, where, and under what circumstances a patent could be declared void, and to determine the extent of the power of the land department of the government of the United States to pass upon and decide jurisdictional facts. The question was referred to and discussed by Mr. Justice Sawyer, in Francoeur v. Newhouse, 40 Fed. Rep. 623, and has been frequently raised and passed upon in a variety of cases in the supreme court of the United States. Polk's Lessee v. Wendal, 9 Cranch, 87; New Orleans v. U. S., 10 Pet. 662, 730; Wilcox v. Jackson, 13 Pet. 498, 509; Stoddard v. Chambers, 2 How. 284, 317; Easton v. Salisbury, 21 How. 426, 428; Reichert v. Felps, 6 Wall. 160; Best v. Polk, 18 Wall. 112, 117; Leavenworth, L. & G. R. Co. v. U. S., 92 U. S. 733; Newhall v. Sanger, Id. 761; Sherman v. Buick, 93 U. S. 209; Smelting Co. v. Kemp, 104 U. S. 636; Steel v. Refining Co., 106 U. S. 447, 1 Sup. Ct. Rep. 389; Railway Co. v. Dunmeyer, 113 U. S. 629–642, 5 Sup. Ct. Rep. 566; Reynolds v. Mining Co., 116 U. S. 687, 6 Sup. Ct. Rep. 601. The general principles bearing upon this subject are very clearly announced by Mr. Justice Miller in delivering the opinion of the court in Doolan v. Carr, 125 U. S. 624, 8 Sup. Ct. Rep. 1228, as follows:

"There is no question as to the principle that where the officers of the government have issued a patent in due form of law, which on its face is sufficient to convey the title to the land described in it, such patent is to be treated as valid in actions at law as distinguished from suits in equity, subject, however, at all times to the inquiry whether such officers had the lawful authority to make a conveyance of the title. But if those officers acted without authority, if the land which they purported to convey had never been within their control, or had been withdrawn from that control at the time they undertook to exercise such authority, then their act was void,—void for want of power in them to act on the subject-matter of the patent,—not merely voidable; in which latter case, if the circumstances justified such a decree, a direct proceeding, with proper averments and evidence, would be required to establish that it was voidable, and should therefore be avoided. The distinction is a manifest one, although the circumstances that enter into it are not always easily defined. It is, nevertheless, a clear distinction, established by law, and it has been often asserted in this court, that even a patent from the government of the United States, issued with all the forms of law, may be shown to be void by extrinsic evidence, if it be such evidence as by its nature is capable of showing a want of authority for its issue."

In the light of the authorities, there can be no question as to the duty of this court to investigate and determine whether or not defendants' contention is well founded.

It is claimed by plaintiff that upon the facts of this case, and under the provision of section 2328, Rev. St. U. S., the patent must be considered and treated as having been issued under the act of congress of 1866. It is immaterial, so far as the result of this decision is concerned, whether the patent is construed with reference to the act of 1866, or the subsequent provisions of the Revised Statutes, under and in pursuance of which the patent purports to have been issued; but I am of the opinion that the question as to the validity of the patent depends upon the construction to be given to section 2320, Rev. St. U. S. This section reads as follows:

"Mining claims upon veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, heretofore located, shall be governed as to length along the vein or lode by the customs, regulations, and laws in force at the date of their location. A mining claim located after the 10th day of May, eighteen hundred and seventy-two, whether located by one or more persons, may equal, but shall not exceed, one thousand five hundred feet in length along the vein or lode; but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located. No claim shall extend more than three hundred feet on each side of the middle of the vein at the surface, nor shall any claim be limited by any mining regulations to less than twenty-five feet on each side of the middle of the vein at the surface, except where adverse rights existing on the tenth day of May, eighteen hundred and seventy-two, render such limitation necessary. The end lines of each claim shall be parallel to each other."

This entire section seems to be clear, definite, and certain. It provides that all mining claims upon quartz lodes located prior to its passage should be governed as to the length of the claim along the lode "by the customs, regulations, and laws in force at the date of their location;" that the claims located after May 10, 1872, "may equal, but shall not exceed, one thousand five hundred feet in length along the vein or lode." So far the section relates solely to the question of the length of the lode that may be located. It next takes up the question as to how much surface ground will be allowed to the locator of a quartz lode, and says that "no claim"—evidently meaning all claims, whether coming within the first clause, relating to claims located prior to the passage of this section, or within the second clause, relating to location made subsequent thereto—"shall extend more than three hundred feet on each side of the middle of the vein at the surface." Having thus expressed the extent of the surface ground to which the locator may be entitled, it further provides that the amount of the surface ground shall not in any case be limited by any mining regulations to less than 25 feet on each side of the middle of the vein at the surface, except in certain contingencies, which have no application to the facts of this case. After the passage of the act of which this section forms a part, it seems very clear, to my mind, that the land department had no jurisdiction, power, or authority to issue a patent for a quartz lode to any surface ground exceeding 300 feet in width on each side of the middle of the vein or lode, and that any patent which is issued for more than that amount of surface

ground is absolutely null and void as to the excess over 300 feet, and can be collaterally attacked in a court of law.

The principles announced in Smelting Co. v. Kemp, 104 U. S. 636, in so far as the same are applicable to these cases, fully support the conclusions I have reached. There, as here, the patent was regular upon its face, "unless some limitation in the law, as to the extent of a mining claim which can be patented, has been disregarded." In the course of an exhaustive and able opinion by Mr. Justice Field, quoting from Patterson v. Winn, 11 Wheat. 380, it is said that—

"If a patent was issued without authority, or was prohibited by statute, * * * it could be impeached collaterally in a court of law, in an action of ejectment."

In explanation of the phrase "that, if the patent be absolutely void on its face, it may be collaterally impeached in a court of law," the learned justice, delivering the opinion of the court, said:

"It is meant that the patent is seen to be invalid, whether when read in the light of existing law, or by reason of what the court must take judicial notice of; as, for instance, * * * that the patent is for an unauthorized amount."

The contention of the defendants in that case rested upon the correctness of their assertion that a patent could not issue for a placer mining claim which embraced over 160 acres. This contention was sought to be maintained upon the theory that the applicant for a patent could not embody in his application any mining ground that he had purchased from other locators. The court held that there was no valid reason, and nothing in the language of the acts of congress, which prevented an individual from acquiring by purchase the mining ground located by others, and adding it to his own. The views therein expressed are conclusive as to the right of the applicants for a patent to the Mammoth quartz lode to embrace in their application two or more separate locations owned by them on the same lode. In Mining Co. v. Kerr, 130 U. S. 261, 9 Sup. Ct. Rep. 511, the question was presented whether the patent issued for a quartz lode was void because it embraced more than 200 feet in width of surface ground. The question thus raised was substantially the same as is presented here, but the facts were different. There it was shown that the rules adopted on the 17th of May, 1870, by the miners of the district where the lode was located, provided that "the surface width of any mining location shall not exceed 100 feet in width on each side of the wall rocks of said lode;" but it also appeared that in anticipation of the act of congress of May 10, 1872, (section 2320, Rev. St.,) there was a meeting of miners held in said district on the 4th day of May, 1872, and the rules of the district were altered and amended so as to provide that "the surface width shall be governed by laws of the United States of America;" and the court very properly held that, in view of this testimony, the land department had the right to determine which of these rules were in force. What the result of the opinion would have been if there had been no amendment to the mining rules is made clear by the language of the court in its reference to the rules and regulations of the miners adopted in 1870 limiting the surface ground to 200 feet. Upon this point the court said:

"Had that regulation remained in existence, and been in operation at the time the Clara mining claim was located, its effect upon the legality and validity of that location, at least as to all the land in excess of two hundred feet, could not be doubted." 130 U. S. 261, 9 Sup. Ct. Rep. 511.

In the cases under consideration, the surface ground upon which the town of Johnsville is situated, embracing the lands claimed by defendants, was never possessed or located as a part of the Mammoth quartz lode, and there was no law of the United States at the time the application was made for a patent in 1867, or when the patent was issued in 1877, or any state law, or any local rule, regulation, or custom of the miners in the Jamison mining district, which authorized or permitted any such location to be made. The patent, in so far as it includes any of said ground, was issued without any authority of law, and is therefore null and void.

2. Does the agreed statement of facts establish such a tenancy between the respective parties as to estop the defendants from denying the title of plaintiff to the lands in controversy? The general rule that a tenant cannot dispute his landlord's title is too well settled to require any discussion or citation of authorities. This rule, however, is subject to various exceptions and qualifications, equally as important and as well established as the rule itself. Among these exceptions are (1) where the tenant was induced to take a lease by mistake, fraud, or misrepresentation on the part of the lessor; (2) where both parties acted under a mutual mistake as to the law in regard to the title of the lessor; (3) where the tenant did not take possession of the property under the lease, but was in possession at the time he took his lease. Tewksbury v. Magraff, 33 Cal. 241; Franklin v. Merida, 35 Cal. 575; Shultz v. Elliott, 11 Humph. 187; Hammons v. McClure, 85 Tenn. 65, 2 S. W. Rep. 37; Miller v. McBrier, 14 Serg. & R. 382; Swift v. Dean, 11 Vt. 323; Carter v. Marshall, 72 Ill. 609; Bigelow, Estop. §§ 399, 409, 527; 2 Tayl. Landl. & Ten. § 707; Wood, Landl. & Ten. §§ 364, 374. The principles of law relating to these exceptions are elaborately stated, and the reasons given in support thereof are so clearly enunciated, in the authorities cited, that I deem it unnecessary to discuss this branch of the case at any length.

The third ground above stated is the only one upon which there is any dissent. It would probably require in certain cases some qualification, and depend to a great extent, in all, upon the particular facts of each case; but upon the agreed statement of facts the exceptions mentioned are directly applicable to this case, and, in my judgment, conclusive in favor of the right of defendants to show that the plaintiff did not acquire any title to the lands in controversy by virtue of the patent for the Mammoth quartz lode.

It is certainly clear that the parties have acted under a mistake as to the law in regard to the title of plaintiff. Estoppels are said to be odious in law, as they have a tendency to prevent a full, complete, and thorough investigation of the truth; and, in order to be operative in any case, ought to be certain to every intent, precise, clear, and unequivocal, and not depend upon inference. The facts agreed to fall far short of establishing the complete relation of landlord and tenant, express or implied, so as to have the effect in law to estop defendants

from asserting the truth. At the time of the commencement of these suits, the defendants were in possession of the lands occupied by them under the possessory title originally acquired by Banks, and, although they have no title from the government of the United States, they are in a position to show that they have a better right to the lands than plaintiff. If the defendants were simply in possession as mere naked trespassers, without any question of tenancy being raised, they could, in defense of such possession, attack the validity of plaintiff's title; for it has been held by the supreme court of the United States that in cases of this character, as in all other cases of ejectment, the plaintiff must recover upon the strength of his own title, and not upon the weakness of defendants. Reynolds v. Mining Co., 116 U. S. 688, 6 Sup. Ct. Rep. 601; Doolan v. Carr, 125 U. S. 629, 8 Sup. Ct. Rep. 1228.

The facts agreed upon with reference to the payment of taxes are irrelevant and immaterial, as they do not establish any title in either party. In pursuance of the stipulation and agreement of counsel, it follows from the conclusions reached, as to the law of the case, that in the case of Lakin v. Dolly the judgment heretofore entered in favor of the plaintiff must be set aside, upon the payment by defendant of the costs of plaintiff included in said judgment, and judgment be entered in favor of defendant for his costs; and in Lakin v. Roberts et al. judgment must be entered in favor of defendants for their costs. It is so ordered.