## KENDALL *v.* SAN JUAN SILVER MINING COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 294. Submitted April 13, 1892. — Decided April 25, 1892.

Intrusion upon and location of a mining claim within the territory set apart by the treaty proclaimed November 4, 1868, for the exclusive use and occupancy of the confederated bands of Ute Indians, was forbidden thereby; and was inoperative to confer any rights upon the plaintiffs. Location of the same premises by others after extinguishment of the Indian title, and prior to relocation of the former prohibited claim, gave the right of possession.

The failure of the plaintiffs to record their location after extinguishment of such Indian title within the period prescribed by the laws of Colorado,

and until long after the premises had been properly located by others, forbids their claim of priority based upon a wrongful entry during the existence of the Indian Reservation.

*Noonan* v. *Caledonia Mining Co.*, 121 U. S. 393, cited and distinguished.

THIS action was brought in a District Court of Colorado to recover possession of a tract of mineral land, a part of what was known as the " Bear Lode." The plaintiffs claimed under a location made September 3, 1872. The land so located was at that time within the territory reserved for the use and occupancy of the Ute Indians. The Indian title was extinguished in March, 1874, and the defendant claimed under a location made August 29, 1874. The case was submitted on the pleadings and the following stipulation.

" The following stipulation is agreed upon by and between the parties, and testimony relating to the matters herein referred to is waived and may be dispensed with upon the hearing and trial.

" I. It is admitted that the ' Bear ' lode was located Sept. 3rd, 1872, and was duly recorded as stated in the complaint. It is admitted by the defendant that all the averments in paragraph II of the complaint are true, excepting the averment that the Bear Lode mining claim was at the date of its location ' a part of the public domain of the United States and unoccupied & unclaimed by any person and was open to entry as mineral lands;' and excepting, further, that if the locators of the Bear lode were entitled to make any such location whatever of said premises or any part thereof they were not entitled on Sept. 3rd, 1872, or any time prior to June 15th, 1874, to locate a claim exceeding fifty (50) feet in width, and defendant therefore denies that plaintiffs are entitled to more than 50 feet in width, if they are entitled to anything.

" It is further admitted that an additional certificate of location was filed, as stated in paragraph 5 of the complaint.

" It is also admitted that the plaintiffs are the proper persons to maintain this suit, and proof of chain of title and production of conveyances and records is dispensed with.

" It is further admitted that the allegations contained in paragraph 9 of plaintiffs' complaint are true.

"II. It is further admitted that on the 29th day of August, A.D. 1874, A. H. Kallenberg, W. H. Wallace and J. G. Jackson located the 'Titusville' lode, and plaintiffs admit that all the matters and things stated in paragraph 1 of second defence and answer are true; excepting the statement that said 'premises *was* then (Aug. 29th, 1874) a part and parcel of the unoccupied and unappropriated public domain of the United States,' which last averment plaintiffs do not admit.

"It is further admitted that since the respective locations of said 'Bear' and 'Titusville' lodes each of the claimants and their grantors have duly done and performed the annual assessment work, and neither party shall be required to introduce testimony relating to the annual expenditures required by law.

"It is further agreed that the defendant named is the proper party defendant in this action, and that no proof of its chain of title to the 'Titusville' lode or the production of conveyances or records showing such title shall be required."

Judgment for the defendant, which was affirmed by the Supreme Court of the State. To the latter judgment this writ of error was sued out.

*Mr. E. T. Wells,* *Mr. R. T. McNeal* and *Mr. John G. Taylor* for plaintiffs in error.

The only question to be determined by this court is the one presented by the stipulation of counsel filed in the District Court, *i.e.* where citizens, having located or attempted to locate a mining claim on an Indian reservation, and in that connection performed all the acts requisite to a legal appropriation of the ground were the same unoccupied public domain, do their continued possession after the Indian title is extinguished, and their maintenance and adoption of such prior location validate the same as against others seeking to appropriate the premises? If the answer be in the affirmative, the plaintiffs in error are entitled to hold the ground in controversy against the defendants in error. They made the Bear location when it is conceded by every one that the ground was not open to entry or

occupation; still they posted the discovery notice as the law required, they marked the boundary of the claim by putting substantial posts and land marks at each corner, and in the centre of the side lines as the law required; they performed the annual expenditures as the law required, and filed the location certificate with the clerk and recorder of the county in which the claim was situated as the law required.

In June, 1874, when this land was ceded to the government, and by it thrown open to exploration, use and enjoyment by its citizens, these plaintiffs were in possession of the same, working upon it and developing it and enjoying its fruits, maintaining and adopting the boundaries they had previously established in every particular, occupying it with all the *indicia* intact to evidence a mining location. They subsequently filed the certificate required in case of an original location. This was sufficient to entitle them to hold this ground as against the defendants. The fact of their remaining in possession, and maintaining and operating this claim, and thereby adopting all that had been done, was just as efficacious as making a new location. The defendants knew just as well as any one could know that the plaintiffs were there in the enjoyment of this property, and they have sought by straining a technicality to defeat the rights of plaintiffs in this regard. But it is not worth while to pursue any lengthy discussion of this question, as this court has already passed upon it. *Noonan v. Caledonia Mining Co.*, 121 U. S. 393.

The facts and circumstances in the case at bar are on all fours with that case, and it is respectfully submitted that error is manifest in the ruling below.

*Mr. A. T. Britton* and *Mr. A. B. Browne* for defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

The defendant, a corporation organized and existing under the laws of Colorado, in October, 1880, applied to the proper land office in that State for a mineral patent for a lode claim

known as the Titusville lode, in San Juan County, which was fifteen hundred feet in length by three hundred feet in width. Within the time prescribed by statute, and during the month, the appellants here, Kendall and others, filed in the same land office an adverse claim for a portion of the premises, of which the defendant desired to obtain a patent, asserting a prior and superior right to the same, as part of a lode known as Bear lode, which they had discovered on the 3d of September, 1872, and upon which they had sunk a discovery shaft, and performed the several acts required to perfect a mineral location under the laws of the United States and the local rules and customs of miners.  Within thirty days thereafter they brought the present action under section 2326 of the Revised Statutes, to determine as between the parties, the right of possession to the disputed premises, the issue of a patent for the same being dependent upon such determination.  In their complaint they allege the performance of the labor required and all other acts necessary to preserve the lode from forfeiture.  That lode, as originally located, extended fifteen hundred feet in length and one hundred feet on each side of the centre of the vein.  In October, 1878, the locators filed an additional certificate of location in the local land office, claiming one hundred and fifty feet on each side of the centre.  And they aver that the Titusville lode, claimed by the defendant corporation, is a junior location and includes in length twelve hundred feet of the surface ground of the Bear lode, and in width covers more than the south half of the surface ground for the twelve hundred feet.

The defendant in its answer denies that the ground in controversy comprised part of the unappropriated public domain of the United States, and that it was open to location on the 3d day of September, 1872, as set forth by the plaintiffs, and alleges that at that date the ground embraced a portion of a certain tract of land which, by treaty between the United States and certain confederated bands of the Ute Indians in Colorado, concluded March 2, 1868, and proclaimed on the 6th of November of the same year, had been reserved for the use and occupancy of the Indians, and that the Indian title to the

tract was not extinguished until March, 1874. 15 Stat. 619. The answer also alleges that the Titusville lode claim was located on the 29th day of August, 1874; that all acts were done necessary to constitute a valid location of the premises; and that the legal title to the lode, and the right to its pos-. session, had by various conveyances from the original locators become vested in the defendant; and it prays judgment therefor.

By the terms of the treaty mentioned, a tract of country, which included the mining property in question, was set apart for the absolute and undisturbed use and occupation of the Indians therein named, and for such other friendly tribes or individual Indians as, from time to time, they might be willing, with the consent of the United States, to admit among them. And the United States agreed that no persons except those designated, and such officers, agents and employés of the government as might be authorized to enter upon Indian reservations in discharge of duties enjoined by law, should ever be permitted to "pass over, settle upon or reside in the territory described," except as therein otherwise provided. 15 Stat. 619, 620. The effect of the treaty was to exclude all intrusion for mining or other private pursuits upon the territory thus reserved for the Indians. It prohibited any entry of the kind upon the premises, and no interest could be claimed or enforced in disregard of this provision. Not until the withdrawal of the land from this reservation of the treaty by a new convention with the Indians, and one which would throw the lands open, could a mining location thereon be initiated by the plaintiffs. The location of the Bear lode having been made whilst the treaty was in force, was inoperative to confer any rights upon the plaintiffs. Whatever rights to mining land they subsequently possessed upon the original Indian tract were founded upon a new location made more than two years after the withdrawal of the reservation, and after the Titusville lode had been located by the defendant. Had the plaintiffs, immediately after the withdrawal of the reservation, relocated their Bear lode, their position would have been that of original locators. They would then have been within the rule in *Noonan*

v. *Caledonia Mining Co.*; 121 U. S. 393. That rule was this: that where a party was in possession of a mining claim on the withdrawal of a reservation caused by a treaty with the Indians, with the requisite discovery, with surface boundaries sufficiently marked, with a notice of location posted, and with a disclosed vein of ore, he could, by adopting what had been done and causing a proper record to be made, and performing the amount of labor or making the improvements necessary to hold the claim, date his rights from that day. But such was not the case here. The reservation by the treaty was withdrawn in March, 1874; the Titusville lode was located on the 29th day of August, 1874, and the Bear lode of the plaintiffs was not relocated until two years afterwards.

Whatever rights, therefore, the plaintiffs had, subsequently to the withdrawal of the reservation, in the premises claimed by the defendant, arose from its disclaimer. By that disclaimer the company relinquished to the plaintiffs such portion of their Bear lode, with surface width of fifty feet, as came in conflict with the premises claimed by it under the Titusville location, and upon its motion in the trial court, judgment was entered, pursuant to such disclaimer, for the plaintiffs for the amount disclaimed, and for the defendant for the residue.

The plaintiffs now seek, by their writ of error, to recover the residue of the Titusville lode, insisting that, under the decision in *Noonan* v. *Caledonia Mining Co.*, they have a right to all the premises which were covered by their illegal location during the pendency of the Indian treaty. But such is not the proper construction of that decision. There was in that case no new location by different parties, after the removal of the reservation, to interfere with the old location then renewed and with a proper record.

There is another view of this case, which leads to the same conclusion. Section 2324 of the Revised Statutes makes the manner of locating mining claims and recording them subject to the laws of the State or Territory, and the regulations of each mining district, when they are not in conflict with the laws of the United States. The act of Colorado, of February 13, 1874, requires the discoverer of a lode, within three months

from the date of discovery, to record his claim in the office of the recorder of the county in which the lode is situated, by a location certificate.

It also provides that a location certificate of a lode claim which shall not contain the name of the lode, the name of the locator, the date of the location, the number of linear feet claimed on each side of the discovery shaft, the general course of th ᐟ lode, and such description as shall identify the claim with reasonable certainty, shall be void.

The reservation of the premises in controversy by force of the Indian treaty was extinguished April 29, 1874. On that date the premises in controversy were open to location, and within three months afterwards the duty rested upon the plaintiffs to record the certificate of the location of their lode, if they desired to preserve any right in it. No such record of their location was made within that time. No record was made or desired by them until an additional certificate. of location was filed by them, claiming 150 feet on each side of the centre of their vein, which was not done until October, 1878. As they failed to comply with the law in making a record of the location certificate of their lode, it does not lie with them to insist that their wrongful entry upon the premises during the existence of the Indian reservation operated in their favor against parties who went upon the premises after they had become a part of the public domain, and made a proper location certificate and record thereof, and complied in other particulars with the requirements of the law.

*Judgment affirmed.*