JONES et al. v. WILD GOOSE MINING & TRADING CO. et al.

(Circuit Court of Appeals, Ninth Circuit.   March 11, 1910.)

No. 1,754.

MINES AND MINERALS (§ 18*)—MINING CLAIMS—EXCESSIVE LOCATION—RIGHT OF OWNER TO REJECT EXCESS.

    A placer mining claim located in good faith is not wholly void because it exceeds 20 acres, but is void only as to the excess, which may be rejected from any portion the owner may select, and until he has been advised of the excess, and has had a reasonable time to make his selection, his possession extends to the entire claim, and another who goes upon it and makes a location of any part is a trespasser, and his location a nullity and void for any purpose.

    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 35; Dec. Dig. § 18.*]

    Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

Action by the Wild Goose Mining & Trading Company and Frank J. Kolash against Daniel A. Jones and Charles D. Jones. Judgment for plaintiffs, and defendants bring error. Affirmed.

Grigsby & Hill, N. H. Castle, Curtis H. Lindley, and E. M. Rice, for plaintiffs in error.

Albert Fink, Thomas H. Breeze, and Gordon Hall, for defendants in error.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge.  This is an action in ejectment brought by defendants in error, plaintiffs below, to recover possession of a certain piece of placer mining property in Alaska, and for damages.

There is no substantial conflict in the evidence as to the material facts:  On the 1st day of January, 1901, Harry M. Ball located the Navajoe placer claim, which, by the notice of location, and the recorder's certificate, contained a tract of land 1,320 feet long and 660 feet wide, i. e., an area of just 20 acres; but, as actually marked upon the ground by the boundary stakes, there was by inadvertence and honest mistake embraced within the claim an excess amounting to slightly over 2½ acres, so that the claim really covered 22.531 acres, instead of the 20 acres allowed by law.

The Wild Goose Mining & Trading Company and Frank J. Kolash, defendants in error, succeeded to the title of the locator Ball prior to the commencement of this action.

In July or August, 1908, one Van Orsdale had been negotiating with defendants in error for a lease on a portion of the Navajoe claim, and had spoken to plaintiffs in error with a view to having them take over said lease and work the ground.  Thereafter Van Orsdale departed from the locality, but before going notified defendant in error Kolash that the plaintiffs in error were associated with him in the lease, and that they would consummate the same.  To this Kolash

consented. Thereafter, after the departure of Van Orsdale from Nome, plaintiff in error Charles D. Jones called upon Kolash to secure the said Van Orsdale lease. A dispute arose with regard to the amount of land to be covered by the lease, and Kolash, being unwilling to let plaintiffs in error have the amount of land asserted by them to have been negotiated for by Van Orsdale, offered them a definite parcel of the claim, and the next day (August 9th or 10th) the plaintiffs in error visited the Navajoe claim to view the same and to ascertain the boundaries of the portion thereof which Kolash was willing to lease them.

Upon measuring the boundary lines of the Navajoe, plaintiff in error Daniel A. Jones, who is a civil engineer and surveyor, found that they were too long, and that consequently the claim was excessive in area, containing more than the legal 20 acres. He, therefore, directly proceeded to make an accurate survey, and having thereby determined that the Navajoe, as located on the ground, included 22.531 acres, he did on August 12th, without having given the defendants in error any notice of his discovery of the fact that the Navajoe was excessive in area, go to the Navajoe claim and select, locate, and stake a portion thereof as the "Papoose fraction," a triangular tract embracing 2.531 acres of the northeasterly portion of the Navajoe claim, which amount he had ascertained was the excess area included within the original Navajoe boundaries, and which particular piece of ground he preferred to any other in the Navajoe claim. Immediately upon locating the Papoose fraction, plaintiffs in error assumed possession thereof and went to work sinking a shaft, and prosecuted work thereon until during the latter part of September, 1908, when they made a discovery of a few colors of placer gold, and followed this up with a discovery of gold in paying quantities about October 1st.

There is a conflict of testimony among the witnesses as to the exact date when the Navajoe owners became apprised of the fact that their claim was excessive in area, and that the plaintiff in error had located and staked the Papoose fraction. It is admitted, however, that they had no knowledge, and that no notice thereof was given to the owners of the Navajoe by the plaintiffs in error, until after location and staking of the Papoose fraction.

On August 21 or 22, 1908, T. M. Gibson, a representative of the Wild Goose Mining & Trading Company, in a conversation with said Jones, asked the latter to pull up the stakes marking the Papoose fraction, for the reason that "the owners of the Navajoe did not want to cast off the excess, if any there was, just the way he had staked it, but if he would take up his stakes, they would cast off the excess where they thought it best to do so, and that then he could take it if he wanted to." Jones refused to comply with such request. Thereafter on November 7, 1908, defendants in error caused the Navajoe claim to be surveyed, and thereupon cast off 2.54 acres from the southeasterly portion of the claim, and made an amended location of the claim, of the remaining 20 acres. On November 12, 1908, one W. H. Lonagan, acting in behalf of the Wild Goose Mining & Trading Company, located and staked the excess so cast off as the "pump fraction."

At the close of the testimony, plaintiffs moved the court to direct the jury to bring in a verdict for plaintiffs. This request was granted, and the jury, pursuant to the court's instructions, found for the plaintiffs. Judgment was entered in accordance therewith, and defendants sued out this writ, assigning for errors the action of the court in sustaining plaintiffs' motion, and instructing the jury to return a verdict in favor of the plaintiffs, and in entering judgment upon the verdict of the jury, and in overruling defendants' motion for a new trial.

The law under which mining locations may be made is to be found in chapter 6 of title 32, Rev. St. (U. S. Comp. St. 1901, pp. 1422–1442). By section 2322 it is provided that:

"The location of all mining locations * * * on any mineral vein, lode or ledge, situated on the public domain, * * * shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations. * * * "

And by section 2329 it is provided that:

"Claims usually called 'placers' including all forms of deposits, excepting veins of quartz, or other rock in place, shall be subject to entry and patent, under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims."

In a late case, Clipper Mining Co. v. Eli Mining & Land Co., 194 U. S. 220, 24 Sup. Ct. 632, 48 L. Ed. 944, the Supreme Court, commenting on these sections, says:

"It will be seen that section 2322 gives to the owner of a valid lode location the exclusive right of possession and enjoyment of all the surface included within the lines of the location. That exclusive right of possession forbids any trespass. No one without his consent, or at least his acquiescence, can rightfully enter upon the premises or disturb its surface by sinking shafts or otherwise. * * * That exclusive right of possession is as much the property of the locator as the vein or lode by him discovered and located. * * * In Belk v. Meagher, 104 U. S. 283 [26 L. Ed. 735], it was said by Chief Justice Waite that 'a mining claim perfected under the law is property in the highest sense of that term,' and in a later case (Gwillim v. Donnellan, 115 U. S. 45, 49 [5 Sup. Ct. 1110, 1112, 29 L. Ed. 348]), he adds: 'A valid and subsisting location of mineral lands, made and kept up in accordance with the provisions of the statutes of the United States, has the effect of a grant by the United States of the right of present and exclusive possession of the lands located. If, when one enters on land to make a location, there is another location in full force, which entitles its owner to the exclusive possession of the land, the first location operates as a bar to the second.' In St. Louis Mining Co. v. Montana Mining Co., 171 U. S. 650, 655 [19 Sup. Ct. 61, 63 (43 L. Ed. 320)], the present Chief Justice declared that: 'Where there is a valid location of a mining claim, the area becomes segregated from the public domain and the property of the locator. * * * And this exclusive right of possession and enjoyment continues during the entire life of the location.' "

Again, in Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735, the Supreme Court has said:

"Mining claims are not open to location until the rights of a former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he cannot do until the discoverer has in law abandoned his claim, and left the property open for another to take up. The right of location upon the mineral lands of the United States is a privilege granted by Congress, but it can only be exercised within the limits prescribed by the grant. A location can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence a re-

177 F.—7

location on lands actually covered at the time by another valid and subsisting location is void; and this is not only against the prior locator, but all the world, because the law allows no such thing to be done."

These principles of law, long settled and unambiguous, are the ones that must be invoked for guidance in the determination of the single question presented for decision by the record in this case, and that is: The right, as between the parties to this action, to the possession of the ground embraced within the so-called "Papoose fraction" location. It is evident, from the decisions of the Supreme Court above cited, that, if the location by Jones of the Papoose fraction was void and invalid, then no possessory rights were initiated and he acquired none.

In Waskey v. Hammer, 170 Fed. 31, 34, 95 C. C. A. 305, 308, this court said:

"A location made in good faith and otherwise conformable to law is not rendered wholly void by reason of such excess; but that the excessive area only is void is well settled. And that such locator is at liberty to select the portion of the claim that he will reject as such excess is also established law."

And in Walton v. Wild Goose Mining & Trading Co., 123 Fed. 218, 60 C. C. A. 144, this court, through Judge Hawley, regarded an excess of 20 acres in the location of a placer claim as not invalidating the location, but merely rendering it voidable as to the excess. The same doctrines are announced in Zimmerman et al. v. Funchion et al., 161 Fed. 859, 89 C. C. A. 53, and McIntosh v. Price, 121 Fed. 716, 58 C. C. A. 136.

Applying the above principles of law to the facts in the case at bar, it is apparent that Jones, at the time he staked the Papoose fraction, was a wrongdoer, and an intruder and trespasser upon the possessory rights of the defendants in error in and to the Navajoe claim; and that his attempted location of the Papoose fraction, at the time and in the manner he did, was a nullity and void for any purpose, and initiated no rights whatsoever in him, for the reason that the ground covered by such attempted location was, at the time that location was made, in the eye of the law, in the exclusive possession of the defendants in error, under a valid and subsisting location, and they were unaware of, and had not been notified of, the excess, by the plaintiffs in error, nor were they given any opportunity to exercise their right to select and cast off. Until they had received such notice, and were given an opportunity to exercise such right, the whole claim, including any excess due to honest mistake and free from fraud, was so far segregated from the public domain as to exempt it or any part thereof from relocation. In Kendall v. San Juan Mining Co., 144 U. S. 663, 12 Sup. Ct. 779, 36 L. Ed. 583, a case involving the validity of a location of a mining claim upon an Indian reservation which had been set apart for "the absolute and undisturbed use and occupation of the Indians," the Supreme Court used the following pertinent language:

"The effect of the treaty was to exclude all intrusion for mining or other private pursuits upon the territory thus reserved for the Indians. It prohibited any entry of the kind upon the premises, and no interest could be claimed or enforced in disregard of this provision. Not until the withdrawal of the land from this reservation of the treaty by a new convention with the

Indians, and one which would throw the lands open, could a mining location thereon be initiated by the plaintiffs. The location of the Bear lode, having been made whilst the treaty was in force, was inoperative to confer any rights upon the plaintiffs. * * * Had the plaintiffs immediately after the withdrawal of the reservation relocated their Bear lode, their position would have been that of original locators, and they would then have been within the rule in Noonan v. Caledonia Mining Co., 121 U. S. 393 [7 Sup. Ct. 911, 30 L. Ed. 1061]."

So in the case at bar, had the plaintiff in error Jones, after giving the owners of the Navajoe notice of the excess, waited a reasonable time for them to exercise the right to select and cast off, and then relocated the Papoose fraction, a very different question would be presented, and, by a subsequent discovery, he might then perhaps have brought himself within the rule announced in Mining Company v. Tunnel Company, 196 U. S. 337, 25 Sup. Ct. 266, 49 L. Ed. 501. This, however, he did not do, but relied upon his location of August 12, 1908, and this we hold was a nullity, initiating no rights; for, again to follow the doctrine of the Supreme Court, the right to the possession of mining property comes only from a valid location; if there is no location, there can be no possession under it. "A location to be effectual must be good at the time it is made." Belk v. Meagher, 104 U. S. 284, 26 L. Ed. 735. Consequently, a location void at the time it is made, because made on a claim valid and subsisting, continues and remains void, and is not cured or made effectual by subsequent discovery.

The conduct of plaintiffs in error in the location of the Papoose fraction, as appears from the record, was, in our opinion, unjustifiable, and is not to be sanctioned. Moreover, as Chief Justice Waite said:

"To hold that, before the former location has expired, an entry may be made and the several acts done necessary to perfect a relocation, will be to encourage unseemly contests about the possession of the public mineral bearing lands which would almost necessarily be followed by breaches of the peace." Belk v. Meagher, 101 U. S. 285, 26 L. Ed. 735.

The decision which we have thus reached renders it unnecessary to consider and determine the other questions presented in counsel's briefs.

The action of the District Court for Alaska in sustaining plaintiffs' motion to direct a verdict, and in entering judgment on the verdict, was right, and it is affirmed.

GILBERT, Circuit Judge (dissenting). Conceding that the plaintiffs in error could not lawfully make their location at the time when they attempted to make it, the question still remains whether or not the defendants in error had at the time of the commencement of the action such title that they could maintain ejectment against the plaintiffs in error who were in possession of the disputed premises. The plaintiff in ejectment must recover, if at all, on the strength of his own title and not on the weakness or defect of his adversary's title. In the absence of fraud or bad faith, a mining claim which includes more ground than the law allows is not entirely void, but is void only as to the excess. Such is the language of numerous decisions and of the text-writers. The question arises: What portion of the excessive

claim shall be deemed to be the excess? In the case of a lode claim located under regulations or a statute limiting the side lines to a certain width on each side of the vein or the discovery shaft, if the claim as marked is of greater than the permitted width, it is easy to ascertain where and what is the excess, and it would seem that the excess is open to immediate location by another. Taylor v. Parenteau, 23 Colo. 368, 48 Pac. 505; Lakin v. Dolly (C. C.) 53 Fed. 333; Bonner v. Meikle (D. C.) 82 Fed. 697–705. In Hausworth v. Butcher, 4 Mont. 299, 1 Pac. 714, the court said:

"The boundaries must be so definite and certain as that they can be readily traced, and they must be within the limits authorized by law; otherwise their purpose and object would be defeated. The area bounded by a location must be within the limits of the grant. No one would be required to look outside of such limits for the boundaries of a location. Boundaries beyond the maximum extent of a location would not impart notice and would be equivalent to no boundaries at all."

But in the case of a placer claim, where the only limitation is that it shall not exceed 20 acres, the precise part that shall be deemed the excess is not ascertained until the locator in the exercise of his right, on discovering that his claim is excessive, has readjusted his lines so as to exclude the excess. It is the logical deduction from the decisions that, if the original location was fraudulently made excessive, it is void in toto. If this be true, it would seem that if, after discovering that his claim is excessive, the locator willfully continues to maintain his lines as marked upon the ground, and fails within a reasonable time to cast off the excess, he places himself in the attitude of fraudulently asserting claim to a location greater in area than the law permits, the resulting invalidity of which would be the same that it would be if he had made the claim fraudulently excessive in the first instance. The defendants in error in this case failed, for a period of nearly three months after notice that their claim was excessive, to alter their lines so as to conform to the legal requirements. This failure to act, in my opinion, amounted to an active and intentional assertion of an excessive claim, and I submit it should be held that thereby the location became void.

But whether this conclusion is correct or not, in any proper view of the facts and the law applicable thereto the defendants in error are still fraudulently asserting an excessive claim. The only portion of their claim which they have cast off is that portion on which was their posted notice of location, their discovery shaft, and all their extensive workings, and from which practically all the gold extracted from the claim since its location had been taken, and upon which they had, at the time of relocating their lines, ceased their mining operations. To cast off this portion of the claim as excess is but another way of maintaining a claim to the whole location as it was originally made. To hold that a locator of an excessive location may exhaust the mineral from a portion thereof, cast off that portion as the excess, and hold the remainder, would be to open the door to fraudulent location, and would be tantamount to deciding that such a locator, if he can succeed in working out a portion of the claim before notice is brought to him that his claim is excessive, may successfully locate,

hold, mine, and exhaust a placer claim of greater area than the law allows. To hold so would be to render nugatory the express object of the mining laws which limit the size of placer locations, and would permit the miner to profit by his own wrong.

In view of these considerations, I submit that the defendants in error had no title or right of possession on which they could recover in ejectment, and that the trial court erred in directing a verdict for the defendants in error.