**Ford M. CONVERSE, Plaintiff,**

**v.**

**Stewart L. UDALL, Secretary of the Interior, Defendant.**

**INDEPENDENT QUICK SILVER CO., an Oregon corporation, Plaintiff,**

**v.**

**Stewart L. UDALL, Secretary of the Interior, Defendant.**

**Civ. Nos. 65–581, 65–590.**

United States District Court
D. Oregon.

Sept. 14, 1966.

On Motion for New Trial
Nov. 30, 1966.

584

585

William B. Murray, Portland, Or., for plaintiffs.

Jack G. Collins, First Asst. U. S. Atty., and Sidney I. Lezak, U. S. Atty., Portland, Or., for defendant.

## OPINION

KILKENNY, District Judge:

### FACTS IN GENERAL

These cases are considered together, as they present many common questions of law and fact. The chain of events culminating in this review began with two hearings in Portland, United States v. Converse (Contest No. O11195–D) and United States v. Independent Quick Silver Co. (Contest No. O6189–A). The hearings were initiated by the Forest Service, United States Department of Agriculture, pursuant to Section 5 of the Act of July 23, 1955, 69 Stat. 369, as amended, 30 U.S.C. § 613 (Supp. 1965).

The statute, popularly known as the Surface Resources Act, provided in general that rights under any mining claim located after July 23, 1955, the date of the Act's passage, would be subject to the right of the United States to manage and dispose of surface resources other than mineral deposits. It also provided that no mining claim located after that date could be used, prior to the issuance of a patent, for purposes other than prospecting, mining and processing. The purpose of this statute was not to abolish mining claims or to significantly alter mining law, but to limit the use, or misuse, of surface resources (such as timber or peat) by a mining claimant prior to the issuance of a patent, and it applies

only to mining claims located after July 23, 1955.

Consequently, if a mining claim was in all respects valid prior to July 23, 1955, it was not subject to the right of the United States to manage and dispose of its surface resources. But because a mining claim is not considered valid until (a) the boundaries of the claim are marked and until (b) a discovery of a valuable mineral deposit has been made, it became necessary in many instances to make investigations and hold hearings to determine whether or not both of these prerequisites were met prior to the date of the Act's passage. The Act contained detailed provisions for these proceedings.[1] It was pursuant to these provisions that the two hearings here in question took place.

The first hearing, United States v. Converse, transpired June 11, 1962, and involved two mining claims.[2] The second hearing, United States v. Independent Quick Silver Co., took place October 1, 1962, and involved twenty-two mining claims.[3] Both of these hearings were presided over by Graydon E. Holt, hearing examiner for the Bureau of Land Management, who was then stationed at Sacramento, California.

### UNITED STATES v. CONVERSE

At the Converse hearing, the mining claimant Converse filed a motion to change the hearing examiner and filed an affidavit in support of that motion, charging the hearing examiner with bias and prejudice. The motion was denied because not timely filed, and the hearing continued. From the evidence adduced at the hearing, Hearing Examiner Holt concluded that the most favorable finding which could be made for the mining

claimant was that there was sufficient evidence of mineralization to induce a prudent man to retain the claims until a road had been constructed and until more extensive exploration had been completed, but that there was not sufficient evidence of mineralization, as of July 23, 1955, to induce a prudent man to expend labor and means on either the Paymaster or Edith Lode claims with a reasonable expectation of developing a valuable mine. As a result, these two mining claims were held not to have been validated prior to passage of the Surface Resources Act, and were found to be subject to the limitations and restrictions of that Act.

This determination *did not* directly affect the mining claims themselves. The mining claimant still had the right to use the claims for mining purposes, and for any other purpose incidental to mining. The adverse determination to mining claimant Converse *only* precluded him from using the surface resources (including the timber of the claims, which the parties stipulated to have a value of $91,038.61) in a manner not incidental to mining, and made the claims subject to the right of the government to manage the surface resources, until a patent was obtained.

Following administrative regulations, claimant Converse appealed the decision of Hearing Examiner Holt to the Director of the Bureau of Land Management. He contended in substance that: a fair hearing was impossible because the examiner was prejudiced and had prejudged the case; he was entitled to a jury trial, and the administrative hearing was a deprivation of property without due process of law; the government had failed to establish a *prima facie* case, and he had affirmatively showed that a discovery

1. See 30 U.S.C. § 613(a) to (e) (Supp. 1965).

2. Paymaster and Edith Lode, embraced within Secs. 1 and 2, T. 12 S., R. 4 E., W.M., Oregon, (Willamette National Forest), Recorded in Book 8, Pages 214 and 215, Official Records of Linn County, Oregon.

3. Happy Chance, Prospect, Crystal, Pioneer, Ruby, Bonanza, Grub Stake, Zero, Good Luck, New Era, Lost Claim, Green Back, Columbia, Eastern Star, Cosmopolitan, Princess, Commodore, Aetna, Ajax, Aztec, Cornucopia and Jewell Mining Claims, embraced within Sections 17, 19, 20, and 21, T. 14 S., R. 20 E., W.M., Crook County, Oregon.

had been made on each of the claims; the hearing examiner erred in holding that assays of ore samples taken by the mining claimant after July 23, 1955, were inadmissible, while those taken by the contestant after the same date were admissible; and, the government's witnesses did not fairly sample portions of the claims alleged to have been opened prior to 1955.

On October 8, 1963, the Assistant Director, Bureau of Land Management, affirmed the decision of Hearing Examiner Holt. Claimant Converse then appealed to the Secretary of the Interior, reiterating essentially the same arguments that were contained in his appeal to the Director of the Bureau of Land Management, and adding the contentions that the Director erred in holding that "exploration and development," as used in mining laws are not synonymous, and that the Director either ignored or refused to accept the facts found by the hearing examiner. On March 26, 1965, the decision of the Assistant Director was affirmed by Ernest F. Hom, Assistant Solicitor of the Interior, pursuant to authority delegated by the Secretary of the Interior.

## UNITED STATES v. INDEPENDENT QUICK SILVER CO.

Five days prior to the Independent Quick Silver Co. hearing, the mining claimant mailed a motion for change of hearing examiner, together with a supporting affidavit, charging bias, to Hearing Examiner Holt at his Sacramento office. The claimant argued that this was the first date that it knew Holt was going to hear the matter, but the claimant had been in correspondence with Holt, regarding the case, for some seven months prior to the hearing. This motion was denied by Hearing Examiner Holt at the outset of the hearing, on the grounds that the motion had not been timely filed as required by 5 U.S.C. § 1006(a). The hearing then continued, and revolved around the charges that there had been no valuable mineral dis-

covery on any of the twenty-two claims prior to July 23, 1955, and that the boundaries of the claims had not been distinctly marked on the ground. Hearing Examiner Holt held that, with respect to the Bonanza claim, a valuable mineral deposit had been found and that the claimant was entitled to surface rights on that claim. Regarding the other twenty-one claims, he found that the government had established a *prima facie* case in support of the two charges, which had not been refuted by the claimant. As a result, these twenty-one mining claims were held subject to the restrictions of the Surface Resources Act. Regarding the charge that the boundaries of the claims had not been distinctly marked on the ground, the hearing examiner found that the evidence indicated that there were only two known corner posts for the twenty-two claims involved.

Both the government and Independent Quick Silver Co. appealed from this determination by the hearing examiner. Independent Quick Silver argued that: the hearing examiner erred in failing to grant its motion for change of hearing examiner; the hearing was a denial of due process and equal protection, and a taking of property without just compensation; the government failed to establish a *prima facie* case in support of the charges listed in the notice of hearing; the hearing examiner should have allowed its motion to exclude all of the assay reports of the government which were taken after 1955; it was proven by a preponderance of the evidence that discoveries existed on each of the claims involved; and, the examiner erred in failing to adopt certain of its requested findings of fact. The United States, in its appeal, argued that the hearing examiner had correctly found twenty-one of the claims subject to the limitations of the Surface Resources Act, but that the hearing examiner erred in failing to restrict the mining claimant's surface rights on a portion of the Bonanza claim after finding that the boundaries of that claim were not distinctly marked on the

588

ground, and in finding that a discovery of a valuable mineral deposit had been made on a portion of the Bonanza claim.

On June 23, 1964, James F. Doyle, Chief of the Office of Appeals and Hearings of the Bureau of Land Management, affirmed the decision of Hearing Examiner Holt insofar as he held that the twenty-one claims were subject to the restrictions of the Surface Resources Act. The hearing examiner's determination that the Bonanza claim was not subject to the restrictions of the Act was reversed, however, and the government's assertions on appeal were adopted. Independent Quick Silver Co. then appealed this decision to the Secretary of the Interior, as provided for in the administrative regulations. On September 21, 1965, the decision of Doyle was affirmed in all respects by Ernest F. Hom, Assistant Solicitor of the Department of the Interior, pursuant to authority delegated by the Secretary of the Interior.

## CONTENTIONS

Converse and Independent Quick Silver Co., as plaintiffs, are before this Court, in separate actions, in an attempt to vacate the decisions of the Secretary of the Interior, through his duly authorized Assistant Solicitor, whereby all the mining claims in question were held subject to the restrictions of the Surface Resources Act. Both parties have moved for summary judgment based on the record in the administrative file. Review of Secretary Udall's decision may be had under the Administrative Procedure Act, 5 U.S.C. § 1009. Jurisdiction of this Court is based upon that section and upon 28 U.S.C. § 1331. Venue is laid under 28 U.S.C. § 1391(e). In both cases, plaintiffs make the following main contentions:

(1) that plaintiffs were denied due process, for they were compelled to try their cause before a hearing examiner who was biased as a matter of law and as a matter of fact;

(2) that due process was violated because the Secretary of the Interior lacked authority and jurisdiction, by his failure to follow Section 5(a) of the Act of July 23, 1955, 30 U.S.C. § 613(a);

(3) that due process was violated because the Secretary's decision was based on charges different from those laid, for the hearing examiner switched the charges laid to a different charge during the hearing.

Plaintiffs then make several contentions which attack the merits of the two decisions. They are:

(4) that the government had failed in its burden of proof, as it did not establish a *prima facie* case by substantial evidence;

(5) that error had been committed in finding the claims subject to the restrictions of the Surface Resources Act, as the record shows that a valuable deposit of ore was discovered on the claims prior to July 23, 1955.

The United States, as defendant in both these actions, contends that the decisions of the Department of the Interior holding that the government has the surface management rights until such time that patents are issued for the mining claims must be affirmed, as they are fully supported by substantial evidence in the administrative records.

## DISCUSSION

### *Alleged Bias of Hearing Examiner Holt Independent Quick Silver Co.*

In Independent Quick Silver Co., plaintiff insists that Hearing Examiner Holt was biased both as a matter of fact and as a matter of law. As its basis for arguing bias as a matter of law, plaintiff argues that the hearing examiner signed the Notice of Hearing, that the Notice of Hearing should be treated as a complaint in this case, and that, therefore, the hearing examiner both laid the charges and sat in judgment on his own charges. Plaintiff contends then, that this combination of the prosecuting and judging functions violates both the Administrative Procedure Act and the due process clause of the United States Constitution.

As its basis for arguing bias as a matter of fact, plaintiff calls attention

to his motion for change of hearing examiner and supporting affidavit. At the outset of the hearing in question here, the mining claimant attempted to call the hearing examiner as a witness, in support of the charge that he was prejudiced and had pre-judged the case. When the hearing examiner declined to testify, the mining claimant made an offer of proof "to prove that had Graydon Holt, the Hearing Examiner, testified, that he would have admitted that he had pre-judged the case, and, therefore, was prejudiced." The hearing examiner then stated he would not comment on the offer of proof, and plaintiff argues that by passing over the matter without comment the hearing examiner admitted that the charge was correct.

The affidavit signed by the President of Quick Silver is set forth in the footnote.[4]

Plaintiff's motion for a change of hearing examiner was denied by Hearing Examiner Holt, on the ground that the motion was not timely filed as required by 5 U.S.C. § 1006(a).

### Converse

In Converse, plaintiff also argues that Hearing Examiner Holt was biased both as a fact and as a matter of law. As its basis for arguing bias as a matter of law, plaintiff utilizes the same argument made in Quick Silver, i. e. that, by signing the Notice of Hearing, Hearing Examiner Holt in effect signed the com-plaint, and thus took part in the prosecution of the case he later heard.

The basis for arguing bias as a matter of fact is slightly different in this case. An affidavit was filed at the outset of the hearing, in which Converse stated that Hearing Examiner Holt had heard a previous case in which Converse was a mining claimant, and that the case was decided adverse to himself. The balance of the affidavit is set forth in the footnote.[5]

Attorney for plaintiff Converse made a motion for change of hearing examiner under the Administrative Procedure Act, 5 U.S.C. § 1006(a), and asked to call Hearing Examiner Holt to testify in order to prove the averments in Converse's affidavit. The motion for change of hearing examiner was denied, on the ground that it had not been timely filed, and Hearing Examiner Holt refused to testify. The following colloquy then took place between the hearing examiner and Murray, attorney for plaintiff Converse:

"MR. MURRAY: Do I understand that the Hearing Examiner refuses to testify as a witness in support of the facts averred in the affidavit here?

HEARING EXAMINER HOLT: That's correct.

MR. MURRAY: And does the Hearing Examiner deny the offer of proof that we propose to prove by the testimony of the Hearing Examiner

---

4. "I have ascertained and therefore aver that Graydon E. Holt, Hearing Examiner, has never decided a mining case in favor of mining claimants with respect to the question of sufficiency of mineral discovery in any case involving Oregon lands. That the members of my Company are not agreed and feel that they can not have a fair and impartial trial of their case before Graydon Holt, Hearing Examiner."

5. "That based upon the decision in that case and upon the conduct of the Examiner in that case, and upon my own independent investigation, I have concluded that said Hearing Examiner cannot try the above entitled case in an impartial manner, that he has prejudged my case and is unable to grasp any evidence which does not harmonize with his preconceived opinion of the matter. That for me to have a hearing before said examiner is a vain and useless gesture. That I am informed and believe that no mining claimant has ever prevailed in the State of Oregon in a contest of this kind heard by Graydon E. Holt. That I am convinced that if said examiner is permitted to hear my case, that he will ignore the facts, refuse to make findings in accordance with the evidence, and will decide the case against me to please his superiors; that he will exercise no independent judgment of his own but will subordinate the merits to politically dictated policy."

as to the facts averred in the affidavit?

HEARING EXAMINER HOLT: I don't deny the facts. I just deny the motion. You may make an offer of proof, if you care to."

Plaintiff Converse argues that the hearing examiner's statement, "I don't deny the facts," is an admission of the truthfulness of all the allegations set out above in the affidavit, and that it, therefore, establishes bias in fact.

### The Applicable Law

■■ In N.L.R.B. v. Acme-Evans Co., 130 F.2d 477, 482 (7th Cir. 1942), the Court stated: "The heat of the contest has, we think, led respondent to attribute bias because of the intensity of its own feeling." Those words seem appropriate here, for when the assertions of bias in these cases are closely scrutinized, it seems quite clear that intense feelings are all plaintiffs have been able to muster. The briefs, especially on this point, are pregnant with inference, innuendo, and inapplicable (or non-existent) law, but woefully lacking in anything else. It requires a substantial showing of bias to disqualify a hearing officer in administrative proceedings or to justify a ruling that the hearing was unfair. United States ex rel. De Luca v. O'Rourke, 213 F.2d 759, 763 (8th Cir. 1954). Plaintiffs, in my opinion, have fallen far short of meeting this test and, conversely, the record indicates that their hearings were conducted fairly and impartially by Hearing Examiner Holt.

■ A hearing examiner is not biased, either in law or in fact, simply because he previously ruled against one of the parties. N.L.R.B. v. Donnelly Garment Co., et al., 330 U.S. 219, 67 S.Ct. 756, 91 L.Ed. 854 (1947). In the light of this opinion, Converse's allegation that Hearing Examiner Holt had ruled against him in a previous case, is, in itself, of no importance.

■ The allegations in the affidavits that the examiner had never decided a case of this type in favor of mining claimants, are belied by the record which contains copies of findings prepared by the examiner in which he decided wholly or partially in favor of mining claimants in cases involving Oregon land. But, *even if* we were to assume that Holt was predisposed in favor of the government in such actions, the fact remains that the bias has to be personal in order for them to prevail.[6]

Anyway, plaintiffs have not even attempted to show personal bias on the part of Hearing Examiner Holt. He was most solicitous of their feelings at the hearing, and overruled most of defendant's objections, while at the same time sustaining plaintiffs on many of the "grey" points. In *Converse*, as an example, Holt excused one of plaintiff's witnesses after a lengthy direct examination, and stipulated that cross-examination could be taken at a later date, because the witness did not want to continue on the stand and had had heart trouble in the past. Hearsay evidence was often admitted into the evidence for plaintiffs by Holt, over objections by government counsel. In short, he, throughout both hearings, went out of his way to accommodate plaintiffs.

■ The rule that applies to federal judges does not here apply. One of the leading authorities in administrative law, states:

"Unlike federal district judges, examiners and other officers participating in decisions are not forced to withdraw upon the mere filing of a sufficient affidavit." Davis, Administrative Law Text, p. 223.

■■ Plaintiffs' argument that Holt, by signing the notice of hearing, was combining the functions of a prosecutor and a judge, thus violating both the Administrative Procedure Act and due process, is completely specious. These notices

---

6. "It has been held that the bias or prejudice alleged must be 'personal,' and that a mere prejudgment of the case is not sufficient." Marquette Cement Mfg. Co. v. F.T.C., 147 F.2d 589, 592 (7th Cir. 1945).

of hearing did nothing more than notify the plaintiffs of the issues to be dealt with at the subsequent proceedings. The fact that Holt signed such documents, and later presided at the hearing, is no more a violation of due process than the pre-trial orders federal judges sign every day. Moreover, plaintiffs' contention is based on the premise that the hearing examiner brought the charge against these claims, but the simple fact is that he did not. The Forest Service initiated the charges, and this is made clear by the notice of hearing. Thus, Holt *merely informed* the plaintiff of the charges which were brought by the agency. Even if he had instituted the proceedings, this would not have violated the Administrative Procedure Act:

> "The APA says nothing about combination of instituting proceedings with judging. Under the Act, the same individual may 'accuse,' in the sense of deciding that proceedings should be instituted, and may also judge." Davis, Administrative Law Text, p. 242.

Support is found in a law review survey of the law in this area. Note, "Disqualification of Administrative Officials for Bias," 13 Vand.L.Rev. 712, 722, n. 65 (1960).

■ In Independent Quick Silver, plaintiff argues that by passing over the offer to prove that he was biased without commenting on it, Holt admitted that the charge was correct. Plaintiff has not cited any law which indicates silence can be construed as assent in such a situation. On the other hand, United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), supports the opposite view.

In Converse, plaintiff argues that when Holt, in denying the offer of proof that he was biased, stated: "I don't deny the facts. I just deny the motion.", he admitted the truthfulness of the allegations contained in the affidavit. One must be a gymnast in semantics in order to arrive at this conclusion. The statement, when read in context, lends nothing to plaintiff's position.

Both motions for change of hearing examiner were denied on the grounds that they were not timely and sufficient as required by 5 U.S.C. § 1006(a). There seems to be a substantial basis in the administrative record for this determination.

■ Regarding the timeliness of the motion in Converse, even though Hearing Examiner Holt signed the notice of hearing, and even though the plaintiff had been in correspondence with Holt, in his official capacity, for some time prior to the hearing, plaintiff insists that the motion for change of hearing examiner could not have been made prior to the start of the hearing, because he did not even suspect Holt was to hear the case. The record anchors a finding that plaintiff knew for some time that Holt was to hear the case. Furthermore, to permit a mining claimant to delay hearings by waiting until the commencement of a hearing to ask for a change of hearing examiner, where as here it was necessary for the hearing examiner to travel several hundred miles to be present at a hearing, would frustrate the administrative process.

■ In Independent Quick Silver, the motion for change of hearing examiner and supporting affidavit were not "sufficient," inasmuch as they show no real basis for concluding bias. Moreover, the motion does not seem to have been "timely" presented, at least under the circumstances of this case. The motion was not mailed to Holt, at his Sacramento office, until September 26, 1962, five days before the hearing started. Plaintiff states that this was the first date that it "chanced upon the information that Mr. Holt intended to preside." But plaintiff had written to Holt, in his official capacity, some *five months* prior to the hearing, asking for a postponement. It is the practice of the hearing examiners' office at the Bureau of Land Management to have the hearing examiner who signs the notice of hearing preside at the hearing and write the decision. The attorney for Independent Quick Silver was experienced with this

type of case and should have been aware of that practice. For that matter, it was he who represented plaintiff Converse at the other hearing in question here, which took place over *three months* prior to the filing of this motion.

*Secretary's Authority and Jurisdiction*

Both plaintiffs argue that Secretary Udall has denied them due process and "protection of the law" by failing to follow each jurisdictional requirement of the Surface Resources Act, 30 U.S.C. § 613(a), the statute which gave him authority to determine title problems with reference to mining claims. In both briefs, plaintiffs set out many instances in which they assert the Secretary did not comply with the statutory requirements. They are listed and discussed below.

1. No head of a Federal Department requested the Department of the Interior to publish notice to mining claimant. The Chief of the Forest Service, in fact, requested the Department of the Interior to publish the notice to the mining claimants.

2. No such request was made which contained a description of the land by sections. This is without foundation, as the requests, in fact, contained such descriptions.

3. The request for publication was not accompanied by the required affidavit of an affiant who had, in fact, examined the lands. The requests, in fact, were accompanied by affidavits of affiants who had examined the lands.

4. No request for publication was accompanied by the required certificate of title or abstract of title. Here the plaintiffs are technically correct, as the defendant could not comply with the literal wording of the statute due to the fact that there were no tract indexes of the lands in question maintained in the records of Linn and Crook Counties. Because of this fact, defendant instead submitted certificates of the nonexistence of the tract indexes. Obviously, compliance was impossible and the point does not go to the merits.

5 and 6. Plaintiffs allege that the Secretary did not publish notice as required, and that there is no proof of the publication. The affidavits of publication submitted by defendant show that the notices were published.

■ 7. A copy of the publication was not served on the mining claimant as demanded by the statute. This was not done because the affidavits of examination did not show that plaintiffs were in possession of the claims, and, as pointed out above, no tract indexes were kept of these lands by the counties in which they were situated. However, a man who was found on the claims when the mining engineers examined them was served with a copy of the notice of publication, and the notices were published by the local newspapers in accordance with the regulations. Anyhow, plaintiffs were completely informed of the notice of publication, as they answered it by filing their verified statements. They are in no position to question the service.

■ Both plaintiffs also argue that the procedure followed by the Bureau of Land Management in *initiating contests* must be followed in proceedings under the Surface Resources Act. There is no such requirement. The use of a complaint is averted by the publication requirements of that statute.

THE ALLEGED AMENDMENTS

■ Both plaintiffs assert that due process was violated because the Secretary's decision was based on charges different than those laid, and that the hearing examiner switched the charges during the hearing. This allegation is also without foundation. The Notices of Hearing stated that the questions to be determined would be whether sufficient minerals had been found within the limits of the claims to constitute a discovery of a valuable mineral deposit, and whether the claims were sufficiently marked. This ground was not changed by the hearing examiner or by either of the two administrative appeals decisions which followed in both cases.

█ Again, plaintiffs indulge in a play on words. They argue that the notice of hearing said only that the question as to whether mineral discovery had been made within the limits of the claims would be determined. Then they argue that this meant only that their case would be won if they could show a valuable mineral deposit within the boundaries of any of the claims, but that the hearing examiner changed the charges by requiring that a valuable mineral deposit be proven in each and every claim. Suffice to say, the Surface Resources Act requires that a mining claim be located on each and every claim, in order for them to escape the scope of the Act. The argument is frivolous.

█ Plaintiffs make much of the fact that the hearing examiner admitted samples taken by the government after the effective date of the Surface Resources Act, while at the same time denying plaintiffs' motion to admit some samples taken after that date. The issue is not whether there was a discovery at the date of the hearing, but whether a discovery was made upon the claims in question prior to the passage of the Surface Resources Act. To demonstrate a discovery prior to July 23, 1955, required samples of mineral from portions of the claims exposed prior to that date. Plaintiffs' evidence of mineral deposits exposed at a later date was not material. The government's samples were taken from areas which were exposed on or before the date of the Act.

## EFFECT OF THE DECISIONS

The Ninth Circuit Court of Appeals has held that:

"It is the function of neither this Court nor of the District Court, in a proceeding such as this, to weigh the evidence adduced in the administrative proceeding. Rather, if upon review of the entire record of that proceeding there is found substantial evidence to support the Secretary's decision, that decision must be affirmed." Henrikson v. Udall, 350 F.2d 949, 950 (9th Cir.

1965); Adams v. United States, 318 F. 2d 861 (9th Cir. 1963).

█ Upon a review of the entire records of the two proceedings in question here, it is my finding that there is substantial evidence to support the Secretary's decision. A discussion of some of plaintiffs' arguments which attack the merits of these decisions follows.

## BURDEN OF PROOF

█ When the government contests a mining claim, it bears the burden of going forward with sufficient evidence to establish a *prima facie* case. The burden then shifts to the claimant to show, by a preponderance of the evidence, that his claim is valid. Foster v. Seaton, 106 U.S.App.D.C. 253, 271 F.2d 836 (1959). 68 I.D. 235, 238 (1961).

█ From an examination of the entire record, I find that the government did sustain its burden of proof. Manifestly, the testimony of the government witnesses was sufficient to create a *prima facie* case in favor of the government's position. Their examination of the claims and their analysis of the mineral samples taken therefrom failed to disclose a discovery of a valuable mineral deposit on any one or more of the claims.

█ It is now settled beyond question that the issue of whether there has been a valid discovery of minerals is a question of fact. Furthermore, it is indicated that the decision of the Secretary on that issue is conclusive, in the absence of fraud or imposition. Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659 (1920). Whether the decisions of the Secretary of the Interior in this case are conclusive, I need not decide. Certainly, there is no evidence of fraudulent, capricious or arbitrary action on the part of the Interior Department, unless it could be said that the action of the hearing examiner in failing to step aside could be viewed in that light. Already, I have decided adversely to the plaintiffs on this issue. Again, I repeat that the 'finding that a discovery of a valuable mineral deposit was not made on any

one or more of the claims prior to July 23, 1955, is supported by substantial evidence and must not be disturbed.

To be kept in mind is the fact that most of the higher quality samples of minerals, on which plaintiffs rely, were taken from cuts exposed after the effective date of the Act.

## BONANZA CLAIM

One more problem which is worthy of discussion is the finding of the hearing examiner in Independent Quick Silver that the Bonanza Claim was valid. The record quite conclusively shows that the boundary markings on the ground did not measure up to required standards. This fact was recognized by the examiner, but apparently overlooked when preparing his finding on the validity of the claim. Moreover, he assumed that certain improvements were within the boundaries of the claim, despite the fact that no substantial evidence was placed in the record in any way showing that fact.

As pointed out by the record on administrative appeal, the testimony of a Mr. Hogg, on which the hearing examiner relied, was grounded on hearsay. The witness based his testimony, not on his own knowledge, but on information supplied to him by a Mr. Champion, now deceased. The alleged summarization of Champion's panning estimates were not understood by the witness, nor could he make an explanation thereof. Even if I assume that Champion's panning estimates were business records, and thus admissible in evidence, those estimates, on their face, are not sufficient to establish the claim. In any event, there is no substantial evidence that the samples were produced from the earth within the boundaries of the Bonanza Claim, even if legal boundaries in fact existed. I find myself in full agreement with the summarization by the Secretary in his decision.[7]

Although other contentions are made by the respective plaintiffs, I feel they are so intertwined with the subjects here discussed that further analysis is not required. It is sufficient to say that I find no substance in such contentions. Overall, the determination of the Secretary in each case must be affirmed.

Of course, this affirmance in no way affects the validity of the mining claims as such. Plaintiffs retain the right to work their claims for mining purposes, and for all purposes incidental to mining. This affirmance only precludes the plaintiffs from using the surface resources of the claims in a manner which is not incidental to mining, until a patent is obtained. In other words, the claims remain subject to the right of the government to manage the surface resources, when not interfering with the mining.

7. " * * * Although some ore was encountered, the writers of the reports apparently did not consider their findings adequate to support extended mining operations but ·in each report recommended further exploration. As discussed before, one ore body was defined by Hogg, but there was no evidence other than mention of that by Westman, apparently based on his reading of Hogg's report, otherwise verifying that it constituted a mineral deposit which might have value. The evidence does not show that there was any development work done on the ore body. This seems rather strange 23 years after its supposed delineation. The Forest Service mining examiners could not find an ore body exposed which had any cinnabar ore of value.

To conclude, the evidence submitted by the claimant was more quantitative than qualitative. There was a lack of specificity which would relate the information to a particular claim or claims. Much of the evidence was general in nature and much of it, especially specific information, was hearsay where there was no opportunity for cross examination and proper delineation of the purported facts shown. In some instances there was no foundation for some of the information. At the most, even as to the purported ore body on the Bonanza claim, it is apparent that further developmental and exploratory work was recommended. Appellant did not present evidence which would show that any ore bodies supposedly found prior to 1955 constituted valuable mineral deposits as of July 23, 1955, by establishing that a prudent man could expect that the value of the ore would exceed costs in developing the mine and hence could expect that a profitable mine might be developed. This is the test for establishing a discovery in this case. * * * "

The decision of the Secretary in each case must be affirmed.

## ORDER

### On motion for new trial

This cause is before the Court on plaintiffs' motion for a new trial on the Court's previous decision of September 14, 1966.

Independent Quick Silver again challenges the Government's method of sampling each of the twenty-two claims involved, it being claimed that there was a failure to prove a *prima facie* case by substantial evidence. It is urged that the six samples of ore taken by the contestant all came from one of the twenty-two claims in controversy, viz: the Lost Mine Claim.

The evidence is contrary to the plaintiff's contentions. The Forest Service Examiners spent three days examining the claim and, in fact, examined all of the places shown to them by the plaintiff's representatives and took samples of all of the cuts that were open. Plaintiff is not in a position to now urge that all of the samples came from one claim when it was its own representatives who directed the Forest Service Examiners to where to obtain the samples. If, as here, a close scrutiny of the surface indicated that no cuts had been opened other than examined, then it seems rather clear that a mineral discovery had not been made.

Plaintiff again urges that the Assistant Solicitor of the Interior committed error in holding that certain testimony and reports were hearsay. The Solicitor stated, in passing, that much of the evidence was general in nature and that much of it probably, especially specific information, was hearsay where there was no opportunity for cross-examination. Although the Solicitor might have disregarded some of the Hogg statements and the assays compiled by the geologist Westman, the fact remains that the Assistant Solicitor accepted all of this testimony and these records, but found that the evidence lacked specificity and showed only that further exploration was recommended. Plaintiff's real complaint is that the Solicitor did not give more weight to this evidence, rather than excluding it under the hearsay rule.

It is next urged that if the decision of September 14th is allowed to stand that the Court would be approving an administrative decision that the discovery of a body of ore containing 18,600 tons, with an average of 5.2 pounds of mercury per ton, would not be a discovery within the meaning of the mining law. There is nothing in the decision of the Assistant Solicitor, nor, for that matter, in any part of the record, which supports this argument. The Solicitor merely held that the plaintiff did not *sufficiently prove* that such a body of ore existed. In other words, the Solicitor resolved the issue of fact against the plaintiff.

I find nothing in the arguments of Quick Silver which would cause me to, in any way, modify my original opinion.

In the Converse case, it is argued that the original decision departs from the well settled rule of discovery and makes discovery depend on the name applied to the additional work which a reasonably prudent person would be justified in expending in both money and effort. It is argued that the Assistant Solicitor has altered the long-standing policy of the Department and now recognizes a distinction between the terms "discovery", "development" and "exploration". The record leaves little doubt that the Department has long recognized a sharp distinction between "exploration" and "development" in connection with whether a "discovery" has been made. For example, if one has found only enough mineral to justify further "exploration", as yet he has not made a "discovery", but if he has found enough mineral to justify a "development", then a "discovery" has been made. The opinion of the Assistant Solicitor is given complete support by United States v. Altman et al., 68 I.D. 235, 237–8 (1961), from which I quote:

"There is, of course, a distinct difference between exploration and discovery under the mining laws. Exploration work is that which is done prior to a discovery in an effort to determine

596

whether the land contains valuable minerals. Where minerals are found it is often necessary to do further exploratory work to determine whether those minerals have value and, where the minerals are found of low value, there must be more exploration work to determine whether those low-value minerals exist in such quantities that there is a reasonable prospect of success in developing a paying mine. It is only when the exploratory work shows this that it can be said that a prudent man would be justified in going ahead with his development work and that a discovery has been made."

Additional support is added to the opinion of the Assistant Solicitor by United States v. Edgecumbe Exploration Co., Inc., A–29908 (May 25, 1964).

Plaintiff fails to recognize that once the Government has established a *prima facie* case, the burden shifts to the claimant to show by a preponderance of the evidence that his claim is valid. Foster v. Seaton, 106 U.S.App.D.C. 253, 271 F. 2d 836 (1959).

The motion for a new trial in each case is denied.

It is so ordered.