C. A. DAVIS et al., Appellants,

v.

Neal NELSON, State Director, Bureau of Land Management, and Rollo E. Chandler, Manager, and Oliver W. Johnson, Acting Manager, Riverside Land Office, Bureau of Land Management, Department of the Interior, Appellees.

No. 18661.

United States Court of Appeals Ninth Circuit.

March 13, 1964.

Rehearing Denied May 19, 1964.

842

Milton Wichner, Hollywood, Cal., for appellants.

Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis, and Richard N. Countiss, Attys., Dept. of Justice, Washington, D. C., Francis C. Whelan, U. S. Atty., and Richard J. Dauber, Asst. U. S. Atty., Los Angeles, Cal., for appellees.

Before HAMLEY and DUNIWAY, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge.

Some sixty-four plaintiffs filed this action in the district court on behalf of themselves and others similarly situated, seeking to enjoin the State Director of the Bureau of Land Management, Department of the Interior, and the Manager and the Acting Manager of the District Land Office at Riverside, California, from prosecuting certain proceed-ings and from instituting other threatened proceedings contesting the validity of placer claims located by plaintiffs. The case is on appeal from the Judgment of Dismissal entered by the district court granting a motion to dismiss filed by defendants and dismissing the action without prejudice. The jurisdiction of this court is invoked under Title 28 U.S.C. § 1291.

The relevant facts digested from the Complaint, which must be accepted as true, show that plaintiffs and others are the locators and owners of more than three hundred placer mining claims in Kern County, California. The claims were located on the public lands of the United States which were open to location under the mining laws. All the requirements of the mining laws and regulations of the United States and of the State of California governing the location of placer claims, the recordation of notices of location, and the performance and recordation of proofs of annual labor have been fully met. Upon each claim there has been a discovery of valuable minerals, including gold and silver, and the claims have been and are held and worked by extensive excavation for their valuable mineral content. The claims are unpatented mining claims and no application for patent has been filed by any of the claimants.

The defendant officials of the Bureau of Land Management have initiated proceedings in the Land Office contesting the validity of the unpatented claims, alleging with respect to each contested claim that the "land embraced within the claim is non-mineral in character" and that "minerals have not been found within the limits of the claim in sufficient quantities to constitute a valid discovery." Like contests of other claims similarly located have been threatened by defendant officials. The lands on which the claims have been located remain in the public domain, free and open to exploration, location and purchase under the mining laws, and the United States has no present or planned use for the lands nor do the mining claim locations

interfere with any present or planned governmental project.

The contest proceedings in the Land Office are in various stages of completion. With respect to more than 170 of such contests, the Manager of the Land Office, on July 16, 1962, entered orders striking Answers filed on behalf of the owners of the claims. He thereupon declared the charges alleged in the complaints to be taken as admitted, and declared the mining locations to be null and void. The action was taken upon the ground that the Answers so stricken had not been filed by the owner-contestees themselves in propria persona or by anyone authorized and qualified to appear and answer on their behalf. The situation thus created is presented in a separate cause of action of the Complaint seeking nullification of the orders of July 16, 1962 upon the grounds that the action was arbitrary and capricious and constituted an unconstitutional procedure depriving claimants of their property without due process of law.

Inasmuch as we agree with the district court that the complaint does not state a claim upon which relief can be granted within the jurisdiction of the court, we do not discuss other collateral issues raised by the briefs.

The essence of plaintiffs' contention is that the Bureau of Land Management in the Department of the Interior, an agency of the executive branch, has no authority in the related circumstances and under governing laws to initiate a contest of an unpatented mining claim. Plaintiffs state:

"Congress, in exercise of its plenary power over the lands of the United States, granted citizens the rights to freely explore the public domain for minerals, to occupy the lands wherein minerals were found and to freely appropriate the minerals discovered. When Congress entrusted the supervision and management of the public lands to the Secretary of the Interior, it gave him no power to burden or interfere with the citizens' prospecting

and occupation rights. Appellants' complaint shows that by filing contest complaints, appellees are interfering with, burdening and destroying the citizens' rights to prospect and occupy the public domains."

We do not agree.

Congress has charged the Secretary of the Interior "with the supervision of public business relating to the following subjects and agencies: * * * 4. Bureau of Land Management * * * 13. Public lands, including mines." Title 5 U.S.C. § 485. The Secretary has promulgated regulations governing the location, occupation and patenting of mining claims on the public domain (43 C.F.R., Part 185) within the framework of the general mining law (30 U.S.C. § 21 et seq.), which represent a rather thorough codification of the law as established by federal and state court decisions. The regulations were issued under the delegation of authority granted by Congress. Title 43, U.S.C. § 1201; Title 30, U.S.C. § 22. The delegation has been recognized by the Supreme Court as a grant to the Department of the Interior of "plenary authority over the administration of public lands, including mineral lands; and * * * broad authority to issue regulations concerning them". Best v. Humboldt Placer Mining Co. (1963), 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350.

The pertinent regulations provide (43 C.F.R., Part 185):

"Sec. 185.1. Lands subject to location and purchase.

"Vacant public surveyed or unsurveyed lands are open to prospecting, and *upon discovery of mineral*, to location and purchase, as are also lands in national forests in the public-land States, lands entered or patented under the stock-raising homestead law (title to minerals only can be acquired), lands entered under other agricultural laws but not perfected, where prospecting can be done peaceably, and lands within the railroad grants for which patents have not issued.

"Sec. 185.2. Definition of mineral under mining laws.

"Whatever is recognized as a mineral by the standard authorities, whether metallic or other substance, when found in public lands in quantity and quality sufficient to render the lands valuable on account thereof, is treated as coming within the purview of the mining laws. Deposits of coal, oil, gas, oil shale, sodium, phosphate, potash, and in Louisiana and New Mexico sulphur, belonging to the United States, can be acquired under the mineral leasing laws, and are not subject to location and purchase under the United States mining laws.

"Sec. 185.3. Manner of initiating rights under locations.

"Rights to mineral lands, owned by the United States, are *initiated by prospecting for minerals* thereon, and, *upon the discovery of mineral, by locating the lands* upon which such discovery has been made. A location is made by staking the corners of the claim,[2] posting notice of

2. "Except placer claims described by legal subdivision.

location thereon and complying with the State laws, regarding the recording of the location in the county recorder's office, discovery work, etc."

"Sec. 185.4. Who may make locations.

"Citizens of the United States, or those who have declared their intention to become such, including minors who have reached the age of discretion and corporations organized under the laws of any State, may make mining locations. Agents may make locations for qualified locators." (Emphasis added)

These regulations do not conflict with the statutory framework found in the general mining law of May 10, 1872:

Title 30, U.S.C. § 22:

"Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

Title 30, U.S.C. § 23:

" * * * but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located."

Title 30, U.S.C., § 35:

"Claims usually called 'placers,' including all forms of deposit, excepting veins of quartz, or other rock in place, shall be subject to entry and patent, under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims; * * * "

Plaintiffs would have us hold that it is the meaning and intent of the statute that a mining claim located for the purpose of prospecting the land before the discovery of valuable mineral thereon insures in the locator a valid possessory title to the land embraced within the claim which is enforceable against the United States, and which the United States cannot contest, absent other public use for the property. Plaintiffs also argue that if the regulations are interpreted to provide otherwise, they are, to that extent, void and in conflict with the statute.

■ We do not believe the statute may reasonably be so construed. Section 22 does not grant to citizens of the United States the single right to locate, explore and exploit mining claims on the public domain. The statute grants two

rights, (1) the right to explore and purchase all valuable mineral deposits in lands belonging to the United States; and (2) the right to occupation and purchase of the lands in which valuable mineral deposits are found. The right to explore, that is, prospect for valuable minerals on public lands, cannot be telescoped with the right to locate the mining claim and occupy and exploit it for its valuable mineral content after such minerals have been found. From earliest times in the history of mining, the courts have uniformly held that a discovery of valuable mineral must coincide with compliance with the legal requirements for locating a claim before valid ownership of the property has been established. Whenever such coincidence does occur, the locator has acquired a vested property right enforceable and defendable against the United States as well as third persons. Gwillim v. Donnellan (1885), 115 U.S. 45, 5 S.Ct. 1110, 29 L.Ed. 348; Swanson v. Sears (1912), 224 U.S. 180, 32 S.Ct. 455, 56 L.Ed. 721; Cole v. Ralph (1920), 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567. Such vested right may be prosecuted to patent. Title 30, U.S.C. § 29.

■ The case of Union Oil Co. of California v. Smith (1919), 249 U.S. 337, 39 S.Ct. 308, 63 L.Ed. 635, relied upon by plaintiffs, is not contra authority. This was an action to determine contesting claims of private locators to which the United States was not a party and in which the rights of neither locator as against the United States were involved. The court held that the coincidence of discovery of mineral and physical location of the claim need not be simultaneous. The discovery might precede the physical location or the physical location might precede the discovery, but both must occur before a valid unpatented mining claim is acquired.

■ A common practice in the western states among prospectors who intend more than a casual exploration of an area thought to contain mineral is first to locate, mark and record the boundaries

of the claim, and then to expend time, labor, money and energy on the prospect. Such occupation and working of the claim, even before discovery, gives the locator a limited defendable right of possession and a right which is, in some respects, alienable. The right of *pedis possessio* is one which may be transferred by transfer of possession because it rests on actual possession, accompanied by deed, lease or assignment of the color of title represented by the local location and recording of the claim. Miller v. Chrisman (1903), 140 Cal. 440, 73 P. 1083, 74 P. 444; United Western Minerals Company v. Hannsen (1961), 147 Colo. 272, 363 P.2d 677; Weed v. Snook (1904), 144 Cal. 439, 77 P. 1023; Jose v. Utley (1921), 185 Cal. 656, 199 P. 1037.

"In advance of discovery an explorer in actual occupation and diligently searching for mineral is treated as a licensee or tenant at will, and no right can be initiated or acquired through a forcible, fraudulent or clandestine intrusion upon his possession. But if his occupancy be relaxed, or be merely incidental to something other than a diligent search for mineral, and another enters peaceably, and not fraudulently or clandestinely, and makes a mineral discovery and location, the location so made is valid and must be respected accordingly." Cole v. Ralph (1920), 252 U.S. 286, 294, 40 S.Ct. 321, 325, 64 L.Ed. 567.

■ Whatever may be the rights acquired by a prospector, who locates a mining claim prematurely and before actual discovery of valuable mineral, in the defense of his actual possession against third persons, it is clear under both the mining law and the regulations that a discovery of valuable mineral is the sine qua non of an entry to initiate vested rights against the United States. The premature location of such a claim and the recordation of certificates or notices of location cast a cloud upon the title of the United States to the lands, as the law contemplates that discovery must coincide with the physical location of the

claims. Union Oil Co. of California v. Smith (1919), 249 U.S. 337, 39 S.Ct. 308, 63 L.Ed. 635; United States v. Mobley (S.D.Cal.1942), 45 F.Supp. 407; 30 U.S. C. §§ 22, 23, 35; 43 C.F.R. 185.1, 185.3.

■ This is not to say that citizens, and those who have declared their intention to become such, do not also have and enjoy a statutory right to prospect and explore the public domain. Nor do we imply that it is an actionable wrong for a good faith prospector to locate a claim in furtherance and in protection of the right of *pedis possessio* while pursuing his more thorough exploration. But the validity of his title, claimed and asserted by the location of the claim and the recordation of notices, depends upon the resolution of a question of fact, that is, has there been a discovery of valuable mineral within the limits of the claim?

■ To determine the issue, the defendants initiated contest proceedings under authority of the regulations (43 C.F.R. 221.67):

"The Government may initiate contests for any cause affecting the legality or validity of any entry or settlement or mining claim."

Other regulations provide procedures for private contests. 43 C.F.R. 221.51, et seq.

Such administrative proceedings are analogous to an equitable action to remove a cloud on title, and have been held a particularly appropriate vehicle for determination of the validity of mining locations. Best v. Humboldt Placer Mining Co. (1963), 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350. In Mulkern v. Hammitt (9 CCA 1964), 326 F.2d 896, 897, this Court said:

"The 'location' of a mineral claim upon the public lands of the United States is, in effect, a unilateral act by the locator. It indicates that, in his opinion, there are minerals upon the land which are susceptible of profitable exploitation. That opinion may, of course, be, upon examination by less optimistic persons, regarded as ill-founded. If it is, the

Government must have the right to clear the title and the right to the possession of its land from a useless and annoying incumbrance. The proceeding here under review was instituted by the Government because, it contended, the land in question did not contain minerals susceptible to profitable exploitation."

It is also clear that the contest proceedings which plaintiffs seek to enjoin do not attack plaintiffs' asserted right of possession to prospect and explore for minerals. By virtue of having located claims, plaintiffs here, like those in Duguid v. Best (9 CCA 1961), 291 F.2d 235, claim a greater right than that of a mere prospector. The scope of plaintiffs' statutory right to prospect and explore, and of their right to occupancy for such purposes, will not be determined in the contest proceedings.

■ It is our view, therefore, that the Secretary of the Interior, acting through defendant subordinate officials under the grant of authority to supervise public business on public lands, including mines, has power and authority to initiate a contest to see "that valid claims may be recognized, invalid ones eliminated, and the rights of the public preserved." Cameron v. United States (1920), 252 U.S. 450, 460, 40 S.Ct. 410, 412, 64 L.Ed. 659; Duguid v. Best, supra. Such authority is not dependent upon the assertion by the United States of some other use for or the existence of some contemplated public project involving the public lands in question. Establishment of clear title to public lands is itself sufficient justification for the action.

Turning to the Third Cause of Action of the Complaint, which attacks the validity of the decision of the Manager of the Land Office striking the Answers filed in 170 or more of the contest proceedings, the orders of the Manager state:

"The right of appeal to the Director, Bureau of Land Management, is allowed in accordance with information in the enclosed Form 4–1364 (September 1959), made a part hereof. If an appeal is taken, the filing

fee will be $5.00 for each claim included in the appeal. If an appeal is not taken within the time allowed, the contest will be closed without further notice."

The appeal to the Director is provided for by 43 C.F.R. 221.1, and it may be followed by a further appeal to the Secretary of the Interior (43 C.F.R. 221.31) whose decision completes the course of the administrative remedy. 43 C.F.R. 221.37. Concerning defendants' argument that plaintiffs must first exhaust their administrative remedy, plaintiffs say that "Decisions of the acting manager of the Land Office, made without a hearing in violation of the Administrative Procedures Act and in violation of departmental rules and regulations are subject to court review without requiring an administrative appellate adjudication based on proceedings involving fundamental procedural irregularities."

Subordinately, plaintiffs argue that the manager's decisions were based on a determination of an issue of fact without notice or hearing, and that they were made by a person who assumed the power to decide an issue as to which he exercised investigative and prosecuting functions as well, all in violation of the Administrative Procedure Act (5 U.S.C. § 1001, et seq.).

It is of the essence of this argument that the doctrine of exhaustion of administrative remedies does not apply where there have been "fundamental procedural irregularities" in the early stages of the prescribed administrative process, and that resort may then be had to the courts regardless of the right to an administrative appeal.

This is not the law. Procedural errors, no matter how serious, are subject to correction on administrative review equally with erroneous determinations of fact and law after hearing. We cannot assume that improvident or illegal action by the manager would not be summarily reversed by the Director or Secretary. Plaintiffs first must follow the course of administrative procedure to finality before appealing to the courts for relief. Myers v. Bethlehem Shipbuilding Corp. (1938), 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Brown v. Hitchcock (1899), 173 U.S. 473, 19 S.Ct. 485, 43 L. Ed. 772; Interstate Natural Gas Co. v. Southern California Gas Co. (9 CCA 1953), 209 F.2d 380; Olinger v. Partridge (9 CCA 1952), 196 F.2d 986. This is so even if a claim of unconstitutionality is asserted against the administrative process. Monolith Portland Midwest Co. v. Reconstruction Finance Co. (9 CCA 1949), 178 F.2d 854; Aircraft & Diesel Equipment Corp. v. Hirsch (1947), 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796. The Administrative Procedure Act (5 U. S.C. § 1009) expressly provides that "any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the review of the final agency action", and includes within the scope of judicial review of any "final agency action" power to set aside agency action taken "without observance of procedure required by law." The special issues presented by the Third Cause of Action of the Complaint fall before the requirement that plaintiffs must pursue and exhaust their administrative remedies to finality.

In conclusion, we cannot abstain from commenting that if it is true, as alleged in the Complaint, that plaintiffs' mining claims embrace lands of well known and established mineral character upon each of which a discovery of valuable minerals has been made, they need only apply for patents to acquire, at nominal cost, the full fee simple title to the properties. In fact, pursuance of this administrative procedure is the only way under present laws in which plaintiffs can ever obtain such title. If, however, plaintiffs seek only to protect the rights granted by law to prospect and explore the public domain, these rights, as we have seen, are not threatened by the contest proceedings initiated by defendants.

The Judgment of Dismissal entered by the district court is affirmed.