**UNITED STATES of America, and United States District Court for the Central District of California, Plaintiffs-Appellees,**

**v.**

**Curtis Howe SPRINGER, aka Curtis H. Springer, et al., Defendants-Appellants.**

**No. 73–1876.**

United States Court of Appeals, Ninth Circuit.

Jan. 17, 1974.

Rehearing Denied Feb. 26, 1974.

---

George W. Nilsson, Los Angeles, Cal. (argued), for defendants-appellants.

William D. Keller, U. S. Atty., Los Angeles, Cal., Wallace H. Johnson, Asst. U. S. Atty., Gen., Carl Strass (argued), Edmund B. Clark, U. S. Dept. of Justice, Washington, D. C., for plaintiffs-appellees.

Before TRASK and GOODWIN, Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge:

The early history of this case is related in an opinion of the District Court granting a partial summary judgment, United States v. Springer, 321 F.Supp. 625 (C.D.Cal.1970), followed by issuance of a preliminary injunction, and in an opinion of this Court affirming, United States v. Springer, 478 F.2d 43 (9th Cir. 1972). The facts as related in those opinions have not been materially controverted or changed in subsequent proceedings.

The prime thrust of the original complaint was that defendants be completely ejected from the premises in question. The effect of the preliminary injunction issued June 18, 1971, which was the subject of the earlier appeal, was to prohibit any use or occupation of the mining claims by defendants other than for legitimate mining purposes. The instant appeal is from a summary judgment entered March 6, 1973, which, in substance, decrees that defendants have no right, title or interest in the public lands in question and orders their immediate ejectment therefrom.

The summary judgment was entered upon review of an administrative record produced in the Department of Interior after the United States had initiated proceedings in the Department contesting the validity of the ten mining claims (nine placer claims and one lode claim) relied upon by defendants to support their right to possession of several hundred acres of public domain.[1]

The final decision of the Interior Board of Land Appeals was made on November 14, 1972. Thereafter, the District Court permitted the United States to file a supplemental complaint in the pending ejectment action which alleged the invalidity of the mining claims based upon the final agency action by the Interior Board of Land Appeals. The entire administrative record was lodged with the Court and the action became one to review final agency action under the Administrative Procedure Act. The District Court sustained the administrative decision declaring the invalidity of defendants' mining claim locations.

On this appeal, defendants make several contentions, none of which have merit.

The defendants contend that the United States has no power under the mining laws to initiate a contest of the validity of unpatented mining locations. This is not the law. United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968); Best v. Humboldt Placer Mining Co., 371 U.S. 334, 83 S. Ct. 379, 9 L.Ed.2d 350 (1963); Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659 (1920).

The defendant assigns as error the action of the District Court permitting the filing of a supplemental complaint and also the whole procedure of holding the principal action in abeyance pending an administrative determination of the validity of the mining claims by the Department of the Interior. This,

---

* Honorable Bruce R. Thompson, United States District Judge, District of Nevada, sitting by designation.

1. The then pendency of these contest proceedings was noted by this Court in the earlier opinion. 478 F.2d 45, fn. 2.

however, is the very procedure which was approved by the Supreme Court in Best v. Humboldt Placer Mining Co., 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963). In the ejectment action as originally commenced, defendants' right to possession depended upon the validity of the mining claims. After final agency action was obtained, a supplemental pleading "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented" is plainly authorized by the rules. Rule 15(d), Federal Rules of Civil Procedure.

■ Defendants further contend that the Interior Board of Land Appeals and the District Court erred in holding that after the Government has presented a prima facie case of the invalidity of the mining locations, the burden of proof is on the locator to establish all the requirements for a valid location. Defendants rely on 5 U.S.C. § 556(d): "Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof."

While, on the face of it, it may appear that the United States, when it initiates a contest of the validity of a mining location, is "the proponent of a rule or order," this is not the law. Many public land laws, including the mining laws, give a person a right to initiate a claim to the public lands by his ex parte act of entry. If he thereafter complies with all requirements of the law, his initial entry may ripen into an enforceable claim to title as against the United States. The entryman is the true proponent of the rule or order within the meaning of the quoted section of the Administrative Procedure Act. Foster v. Seaton, 106 U.S.App.D.C. 253, 271 F. 2d 836 (1959); United States v. Toole, 224 F.Supp. 440 (D.C.Mont.1963); Stewart v. Penny, 238 F.Supp. 821 (D. C.Nev.1965); Converse v. Udall, 262 F. Supp. 583 (D.C.Or.1966); Unruh v. Udall, 269 F.Supp. 97 (D.C.Nev.1967).

Defendants' most strongly asserted contention is that the decision invalidating the mining locations is contrary to law. The undisputed proof is that these mining claims located in 1944 have been continuously occupied and used by defendants since that time. Defendants rely on 30 U.S.C. § 38:

"Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the State or Territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter and sections 71 to 76 of this title, in the absence of any adverse claim; but nothing in this chapter and sections 71 to 76 of this title shall be deemed to impair any lien which may have attached in any way whatever to any mining claim or property thereto attached prior to the issuance of a patent." 30 U.S.C. § 38.

■ This statute does not, however, give defendants any rights against the United States which they would not have had in the absence of the statute. United States v. Consolidated Mines & Smelting Co., Ltd., 455 F.2d 432 (9th Cir. 1971). The statute "was not enacted as a statute of limitation, and has no application in the case of a trespasser on land, title to which cannot be acquired under the laws of the United States." Chanslor-Canfield Midway Oil Co. v. United States, 266 F. 145, 151 (9th Cir. 1920). In other words, the statute does not dispense with the requirement that a discovery of valuable mineral shall have been made. Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567 (1920).

■ The determination by the Interior Board of Land Appeals that there never has been a discovery of valuable minerals to validate the instant mining locations is supported by substantial evidence. Without detailing the evidence adduced at the administrative hearings, it is sufficient to state that defendants' long use of the land has been primarily

for purposes of a health spa. Incidentally, defendants have gathered, packaged and distributed certain mud and salt compounds and have bottled and distributed medicinal waters from the area. But even defendants do not pretend that this was an important part of their resources. The products were not sold. They were distributed gratis to persons asking for them. Support came in the form of voluntary donations resulting from Dr. Springer's radio appeals. These activities cannot by any stretch of the imagination be considered the mining of valuable minerals within the tests established by law. United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968).[2] It is not enough to prove that the mining claims have been occupied and used and that material gathered therefrom has been exploited. The evidence must show that the minerals taken intrinsically satisfy the prudent man test and the marketability test established by the cases. In this case, the evidence shows beyond cavil that whatever success was experienced in the distribution of products from the mining claims was not because of their intrinsic worth on the market.

The judgment is affirmed.

---

2. "The Secretary's determination that the quartzite deposits did not qualify as valuable mineral deposits because the stone could not be marketed at a profit does no violence to the statute. Indeed, the marketability test is an admirable effort to identify with greater precision and objectivity the factors relevant to a determination that a mineral deposit is 'valuable.' It is a logical complement to the 'prudent-man test' which the Secretary has been using to interpret the mining laws since 1894. Under this 'prudent-man test' in order to qualify as 'valuable mineral deposits,' the discovered deposits must be of such a character that 'a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine . . . .' Castle v. Womble, 19 L.D. 455, 457 (1894). This Court has approved the prudent-man formulation and interpretation on numerous occasions. See, for example, Chrisman v. Miller, 197 U.S. 313, 322 [25 S.Ct. 468, 49 L.Ed. 770]; Cameron v. United States, 252 U.S. 450, 459 [40 S.Ct. 410, 64 L.Ed. 659]; Best v. Humboldt Placer Mining Co., 371 U.S. 334, 335–336 [83 S.Ct. 379, 9 L.Ed.2d 350]. Under the mining laws Congress has made public lands available to people for the purpose of mining valuable mineral deposits and not for other purposes.

The obvious intent was to reward and encourage the discovery of minerals that are valuable in an economic sense. Minerals which no prudent man will extract because there is no demand for them at a price higher than the cost of extraction and transportation are hardly economically valuable. Thus, profitability is an important consideration in applying the prudent-man test, and the marketability test which the Secretary has used here merely recognizes this fact.

"The marketability test also has the advantage of throwing light on a claimant's intention, a matter which is inextricably bound together with valuableness. For evidence that a mineral deposit is not of economic value and cannot in all likelihood be operated at a profit may well suggest that a claimant seeks the land for other purposes. Indeed, as the Government points out, the facts of this case—the thousands of dollars and hours spent building a home on 720 acres in a highly scenic national forest located two hours from Los Angeles, the lack of an economically feasible market for the stone, and the immense quantities of identical stone found in the area outside the claims—might well be thought to raise a substantial question as to respondent Coleman's real intention." United States v. Coleman, 390 U.S. 599, at 602–603, 88 S.Ct. 1327, at 1330, 20 L.Ed.2d 170 (1968).