UNITED STATES of America, Plaintiff-Appellee,

v.

Merle I. ZWEIFEL and Kenneth Roberts et al., Defendants-Appellants.

No. 74–1087.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 11, 1974.

Decided Jan. 14, 1975.

Clement Theodore Cooper, Washington, D. C. (Franklin J. Smith, Cheyenne, Wyo., with him on the brief), for defendants-appellants.

Jacques B. Gelin, Washington, D. C. (Wallace H. Johnson, Asst. Atty. Gen., Richard V. Thomas, U. S. Atty., and Terrence L. O'Brien, Washington, D. C., with him on the brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, HOLLOWAY, Circuit Judge, and CHRISTENSEN, District Judge.

LEWIS, Chief Judge.

Twenty-seven persons who, through Merle I. Zweifel, filed association mining claim certificates covering large tracts of public land in Wyoming, appeal from a judgment of the United States District Court for the District of Wyoming invalidating their claims and quieting title to the lands in the United States. This appeal turns on the questions whether the district court had jurisdiction over

the government's suit and, if so, whether the court could properly exercise jurisdiction in view of the government's failure to seek a prior administrative determination of the validity or invalidity of the mining claims alleged to cloud the government's title.

## I

Zweifel advertised a claim-staking service and thereby induced the appellants and others to invest in his plan to stake association placer mining claims covering portions of the Green River Formation in Wyoming. Zweifel filed location certificates for several thousand such claims between 1965 and 1971. After filing the certificates, Zweifel communicated with firms holding coal prospecting permits or leases for the same lands; citing the Multiple Mineral Development Act, 30 U.S.C. § 526(e), he demanded survey and other information from those firms, and he requested that agreement be reached for the processing and extraction of locatable minerals commingled in the coal deposits.

On October 17, 1972, the United States brought suit against some 267 claimants, including the appellants, to invalidate claims that Zweifel purported to have located throughout nine counties of Wyoming. The government alleged that these claims constituted a cloud on its title to public lands. In a nonjury trial, the government's witnesses included six persons who, as geologists or mining engineers, had inspected some of the lands for which Zweifel had filed location certificates. They testified that they had observed no mineral discovery or production activity, nor any posts, stakes or location notices, on any of the Zweifel claims. An official of the Wyoming Tax Department testified of the absence of any record of mineral production for purposes of assessing state ad valorem taxes on production. An official of the

Wyoming Department of Environmental Quality testified of the absence of any application by Zweifel for a permit to mine, mill, or disturb the surface for discovery or development work, as required by Wyoming law.[1] Finally, officials of the Bureau of Land Management testified that insofar as they had inspected Zweifel's claims they had observed no development or mining activity. A BLM inspector testified that it would have been impossible for Zweifel to locate, as his filed location certificates indicated, 2,000 mining claims in one day. The appellants presented no evidence; the court took notice, however, of interrogatories tending to show that Zweifel had represented to the appellants that he or his agents had performed necessary location and discovery work on the claims.

An understanding of the court's ruling requires a brief summary of applicable mining law. Federal law requires that mining locations be made in good faith for the purpose of mining, processing or prospecting for valuable minerals. 30 U.S.C. § 612; United States v. Nogueira, 9 Cir., 403 F.2d 816. Locations must be distinctly marked on the ground, and not less than $100 worth of labor must be performed or improvements made annually on each claim. 30 U.S.C. § 28. A locator's failure to comply with these requirements opens the claim or mine to relocation by others just as if no location had ever been made. *Id.* Federal law also subjects mineral locators to such state location requirements as are not inconsistent with federal mining provisions. Kendall v. San Juan Silver Mining Co., 144 U.S. 658, 12 S.Ct. 779, 36 L.Ed. 583. Wyoming law requires the discoverer of any placer claim to file, within 90 days of discovery, in the office of the county clerk, a location certificate containing, *inter alia,* the date on which location work was performed. Wyo.Stat. § 30–

---

1. The Wyoming Environmental Quality Act, Wyo.Stat. § 35–502.1 et seq., effective in 1973, requires miners and prospectors obtain a license for discovery work that disturbs the land's surface by dozing. Wyo.Stat. §§ 35–502.30, 35–502.31. Prior law in effect since 1969 required permits for mining and milling operations only.

10. Before filing the certificate, the discoverer must have located the claim by marking its surface boundaries with "substantial monuments." *Id.* §§ 30–3, 30–10.[2] Under both federal and state law, a valid mining location cannot be made without a discovery of valuable minerals within the claim. 30 U.S.C. § 23; Best v. Humboldt Placer Mining Co., 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350; Dean v. Omaha-Wyoming Oil Co., 21 Wyo. 133, 128 P. 881, 129 P. 1023. *See* 1 Rocky Mntn. Mineral Law Foundation, American Law of Mining § 4.13 et seq. "Discovery" in this context means the actual physical disclosure of a valuable mineral deposit. Henault Mining Co. v. Tysk, 9 Cir., 419 F.2d 766. A "valuable" mineral deposit is one that "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine". United States v. Coleman, 390 U.S. 599, 602, 88 S.Ct. 1327, 20 L.Ed.2d 170, *quoting,* Castle v. Womble, 19 L.D. 455, 457.

The court below held that the challenged Zweifel claims constituted a cloud on the title of the United States to public lands and that the government had proved prima facie that the claims were invalid on the following grounds. (1) The claims were not located in good faith for mining purposes. (2) The claimants made no discovery of mineral deposits locatable under federal mining law. (3) The claimants made no discovery of valuable mineral deposits. (4) The claims were not located in compliance with federal and state procedures with respect to the fixing of notice on and designating the boundaries of each claim.

The court based its jurisdiction upon 28 U.S.C. § 1345, which vests the district courts with jurisdiction in all civil actions commenced by the United States, except as otherwise provided by Congress. The appellants' chief argument both at trial and on appeal is that the statutes giving the Secretary of the Interior plenary authority over the administration of public lands[3] and the regulations authorizing the government to initiate administrative proceedings to invalidate mining claims[4] create an exception to section 1345's jurisdictional grant to the district courts. Appellants thus contend that the Department of the Interior has exclusive original jurisdiction over actions commenced by the government for the sole purpose of invalidating unpatented mining claims. Appellants infer that the government has attempted to obscure the jurisdiction issue by styling its action to invalidate mining claims as one to quiet title. We begin by denying that the government acted improperly in this respect.

## II

A discovery of valuable minerals by a qualified locator upon unappropriated public land creates substantial rights in the locator as against the United States. If one locates, marks and records his claim in accordance with federal and state law, he has "an exclusive right of possession to the extent of his claim as located, with the right to extract the minerals . . . without paying any royalty to the United States as owner, and without ever applying for

---

2. Wyoming law also requires the annual performance of $100 or more assessment work. Wyo.Stat. §§ 30–11, 30–12, 30–14.

3. 43 U.S.C. § 2 provides in part:
 The Secretary of the Interior or such other officer as he may designate shall perform all executive duties appertaining to the surveying and sale of the public lands . . . or in anywise respecting such public lands, and, also, such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the Government.

43 U.S.C. § 15 provides in part:
 All patents for public lands shall be issued and signed by the Secretary of the Interior in the name of the United States . . . .
43 U.S.C. § 1201 provides:
 The Secretary of the Interior, or such officer as he may designate, is authorized to enforce and carry into execution, by appropriate regulations, every part of the provisions of this title not otherwise specifically provided for.

4. 43 C.F.R. § 4.451–1.

a patent or seeking to obtain title to the fee . . . ." *Union Oil Co. v. Smith,* 249 U.S. 337, 348–349, 39 S.Ct. 308, 311, 63 L.Ed. 635. Location and recordation of claims without actual discovery of valuable minerals, or recordation without marking the claim in compliance with federal and state law casts a cloud on the title of the United States. *See* Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659; Davis v. Nelson, 9 Cir., 329 F.2d 840. The authority of the Secretary of the Interior, or of the Justice Department at the behest of the Secretary, to contest the validity of mining claims on public lands is not dependent upon the assertion by the United States of some contemplated use for the lands in question. "Establishment of clear title to public lands is itself sufficient justification for the action." *Davis v. Nelson, supra,* 329 F.2d at 846.

■ As the appellants observe, private claimants are prohibited from seeking federal court interference with proceedings to determine the validity of claims pending before the Department of the Interior. Once the Secretary has initiated an administrative contest, the jurisdiction of the courts is withdrawn as respects suits filed by *private* claimants either to halt the administrative proceedings or to substitute the court's determination of claim validity for that of the Interior Department. *See* Northern Pac. Ry. v. McComas, 250 U.S. 387, 39 S.Ct. 546, 63 L.Ed. 1049; United States v. Hitchcock, 190 U.S. 316, 23 S.Ct. 698, 47 L.Ed. 1074; Brown v. Hitchcock, 173 U.S. 473, 19 S.Ct. 485, 43 L.Ed. 772. These authorities, however, do not foreclose the government's entering federal court to vindicate its title to public lands, United States v. Nogueira, 9 Cir., 403 F.2d 816. Nor do the statutes conferring upon the Secretary authority over the administration of public lands constitute, by their terms, an exception to federal court jurisdiction under 28 U.S.C. § 1345. To read into these statutes an implied exception to the general grant of jurisdiction would, in cases like the present one, pointlessly defeat the policy of the mining laws to keep the public mineral lands open to qualified locators and thereby to encourage discovery of valuable deposits. *See* 30 U.S.C. § 22; United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170. Were we to insist upon full administrative consideration of patently invalid claims, followed by court review of administrative action, we would needlessly prolong the period during which qualified locators would forbear from discovery work on the clouded lands.

■ We therefore hold that the United States may, at its election, proceed either in the administrative tribunal of the Department of the Interior or, under 28 U.S.C. § 1345, in the district court to clear title to public lands where the validity of unpatented mining claims is at issue.

Best v. Humboldt Placer Mining Co., 371 U.S. 334, 83 S.Ct 379, 9 L.Ed.2d 350, is not to the contrary. There the Supreme Court held that the United States could properly resort to administrative proceedings even though it had possession of the property by virtue of a condemnation suit instituted in federal court. The Court's decision in *Best,* significantly, bore upon the propriety of coordinated judicial and administrative inquiries into the government's rights in mineral lands. Although the Court sounded general approval of district court *abstention* with respect to issues uniquely within the particular expertise of the Department of the Interior (*see* discussion *infra*), *Best* cannot be read to limit federal court jurisdiction over civil suits initiated by the government. Rather the law remains that the United States, having title to public lands, is free to vindicate its rights therein either before the Interior Department or in the courts "at its election if proceedings are initiated by it." Kennedy v. United States, 9 Cir., 119 F.2d 564, 565. *See also* United States v. Schultz, N.D.Cal., 31 F.2d 764; United States v. Mobley, S.D.Cal., 45 F.Supp. 407.

■ Appellants' more compelling argument is that even if the district

court had jurisdiction over the government's action, the court should nevertheless have deferred to the Department of the Interior for an administrative determination of the Zweifel placer claims' validity. "When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved." Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 68, 91 S.Ct. 203, 208, 27 L.Ed.2d 203. The principal reason behind the practice of so routing certain issues to agency tribunals is the need for orderly and sensible coordination of the work of agencies and of the courts. "Whether the agency happens to be expert or not, a court should not act upon subject matter that is peculiarly within the agency's specialized field without taking into account what the agency has to offer, for otherwise parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements." 3 Davis, Administrative Law Treatise § 19.01 (1958).

■■■■ Certainly the Interior Department is charged with primary responsibility for determinations of the validity of mining claims. Best v. Humboldt Placer Mining Co., 371 U.S. 334, 337, 83 S.Ct. 379, 9 L.Ed.2d 350. But we believe that the court below correctly refused to insist upon a prior administrative inquiry to the challenged Zweifel claims for two reasons.

■■■■ First, the agency to which appellants would have the court turn was itself very much a part of this litigation, and the agency's position with respect to the claims was clear. The suit was filed at the behest of the Secretary of the Interior. An inspector for the Bureau of Land Management testified as to the physical impossibility of Zweifel's having located some 2,000 claims, as the location certificates indicated. Moreover, the Department of the Interior's views as respect Zweifel's failure to do development work on appellants' claims should be abundantly clear from a line of the Department's decisions spanning eighty years.[5]

■■■■ Second, the conclusion of the court below that Zweifel did not locate appellants' claims in good faith for mining purposes did not involve a factual inquiry with respect to which courts, because of their relative inexperience in the area, must defer to the expertise of the Interior Department. The issue of good faith in filing location certificates involves an inquiry into the intent of the locator. United States v. Nogueira, *supra*, 403 F.2d at 823. Courts, we submit, regularly decide such questions, and the district court in the present case was fully qualified to do so. An important principle underlying the doctrine of primary administrative jurisdiction is that "in cases raising issues of fact not within the conventional experience of judges . . . agencies created by Congress for regulating the subject matter should not be passed over." Far East Conference v. United States, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576. The desirability of court abstention diminishes where the court faces factual issues of the sort that it considers routinely.[6]

5. If mining claimants have held claims for several years and have attempted little or no development or operations, a presumption is raised that the claimants have failed to discover valuable mineral deposits or that the market value of discovered minerals was not sufficient to justify the costs of extraction. *E. g.,* United States v. Humboldt Placer Mining Co., 8 IBLA 407 (1972); United States v. Ruddock, 52 L.D. 313 (1927); Castle v. Womble, 19 L.D. 455 (1894).

6. Appellants make the related contention that the district court improperly granted equitable relief where an adequate remedy at law—that is, agency invalidation of the claims—was available to the government. Since we are of the view, expressed above, that proceedings before the Department of the Interior would result in pointless continued impairment of the public's rights of access to lands covered by the Zweifel claims, we believe that the government cannot be said to have had an

## III

Appellants acknowledge the established rule that in an action to contest mining claims the government bears the burden of establishing prima facie the invalidity of the claims, the burden then shifting to the claimant to prove that his claims are valid. United States v. Springer, 9 Cir., 491 F.2d 239; Foster v. Seaton, 106 U.S.App.D.C. 253, 271 F.2d 836. Appellants do not apparently dispute that the government established prima facie the invalidity of their claims. Rather they urge reexamination of the rule requiring only prima facie proof of invalidity in light of the general federal principle that the party who has pleaded the existence or nonexistence of a fact must bear the whole burden of proving the same.

██ In both *Foster* and *Springer* claimants sought court review of adverse rulings by the Interior Department. They argued that the rule requiring the government to make only a prima facie showing of claim invalidity in agency contests contravened provisions of the Administrative Procedure Act that require the proponent of a rule or order to bear the burden of proof, except as otherwise provided by statute. In response to this argument both courts reasoned as follows. The mining laws give a person the right to initiate a claim to public lands by means of the unilateral act of entry. After he complies with all the requirements of the law as to discovery, location, and assessment work, his entry may ripen into a claim against the United States. In a contest proceeding, therefore, the claimant rather than the government is the proponent of a ruling that he has complied with applicable mining laws. The government must go forward with sufficient evidence to establish prima facie the invalidity of contested claims, and the burden then shifts to the claimant to show by a preponderance of the evidence that his claim is valid. United States v. Springer, *supra,*

491 F.2d at 242; Foster v. Seaton, *supra,* 271 F.2d at 838.

We believe the same reasoning applies in the present quiet title action. "Were the rule otherwise, anyone could enter upon the public domain and ultimately obtain title unless the Government undertook the affirmative burden of proving that no valuable deposit existed." Foster v. Seaton, *supra,* 271 F.2d at 838. We agree with the cited authorities that Congress did not intend to place this burden on the Secretary of the Interior.

We have considered appellants' other assignments of error and believe them to be similarly without merit. The judgment of the court below is therefore affirmed.

---

adequate remedy at law. The law does not require needless resort to administrative proceedings as a prerequisite to equitable court intervention. Bannercraft Clothing Co. v. Renegotiation Board, 151 U.S.App.D.C. 174, 466 F.2d 345, 359.