Kenneth ROBERTS et al.,
Plaintiffs-Appellants,

v.

Rogers C. B. MORTON, Secretary of the
Interior, and the Interior Board of Land
Appeals, Defendants-Appellees.

No. 75–1155.

United States Court of Appeals,
Tenth Circuit.

Submitted Nov. 12, 1975.

Decided Nov. 19, 1976.

Rehearing and Rehearing In Banc
Denied March 15, 1977.

Clement Theodore Cooper, Washington, D. C., and Tallmadge, Tallmadge, Wallace & Hahn, Denver, Colo., for plaintiffs-appellants.

Wallace H. Johnson, Asst. Atty. Gen., Washington, D. C., James L. Treece, U. S. Atty., Douglas D. Doane, Asst. U. S. Atty., Denver, Colo. and Jacques B. Gelin, and Eva R. Datz, Attys., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before HOLLOWAY, McWILLIAMS and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

This appeal is taken from a decision of the district court, 389 F.Supp. 87, which sustained the ruling of the Interior Board of Land Appeals, 11 IBLA 53, affirming the administrative law judge's decision that 2,910 unpatented placer mining claims of the plaintiffs-appellants are null and void. *United States v. Zweifel,* Colorado Contest No. 441 (C.C.No. 441). We agree with the district court's conclusions, and affirm.

The decisions cited above amply state the facts. We will only outline the background briefly as a premise for treating the appellate contentions before us.

These proceedings began when the United States filed a complaint in 1968 contesting the validity of these 2,910 unpatented placer mining claims covering portions of the Green River Formation in Rio Blanco, Garfield and Moffat Counties of Western Colorado. Most of these claims lie within the Piceance Creek Basin which contains vast deposits of oil shale. Oil shale has not been locatable under the mining laws since the passage of the Mineral Leasing Act of 1920.

The claims were filed between May, 1966 and February, 1967 (C.C.No. 441, p. 2) for dawsonite and other alumina-bearing compounds. Alumina is the source compound for aluminum. The dawsonite and other alumina-bearing compounds are commingled with the oil shale host rock. (C.C.No. 441, p. 32).

The administrative law judge found that certain of the claims were void *ab initio* since they had been filed on lands withdrawn for reclamation purposes by Public Land Order 2632, 25 Fed.Reg. 2572 (March 17, 1962) (Tr. 53–54). He also dismissed the complaint as to other claims previously pat-

ented by the United States without mineral reservation. (Tr. 53).

In addition, the administrative law judge concluded that all the remaining mining claims were null and void based on findings: (1) that the claimants failed to locate their claims in accordance with the applicable mining laws and regulations, 30 U.S.C. §§ 22 and 28; 43 C.F.R. § 3401.1 (now § 3831.1); Colorado Revised Statutes (C.R.S.) § 92–22–12 (1963), [now C.R.S. § 34–43–112 (1973)]; and (2) that the claimants did not sustain their burden of showing the discovery of a valuable mineral deposit within the limits of each claim within the meaning of the mining laws. 30 U.S.C. §§ 22 and 23. The claimants appealed this decision to the Interior Board of Land Appeals. The Board reviewed the record and upheld the decision of the administrative law judge. The instant suit was then brought in the district court seeking declaratory and injunctive relief and to set aside the final administrative order.

Defendants moved for summary judgment and dismissal on the pleadings. Plaintiffs also moved for summary judgment, with a supporting affidavit. The court considered the propriety of summary judgment on review of an administrative record in light of *Nickol v. United States,* 501 F.2d 1389 (10th Cir.). With the pleadings, motions, briefs and the administrative record before it, the district court concluded that the case was "ripe for final disposition upon the entry of appropriate findings of fact and conclusions of law by this Court." *Roberts v. Morton,* supra, 389 F.Supp. at 90.

Those findings and conclusions followed in the court's written opinion, order and judgment which sustained the agency's rulings and dismissed this action with prejudice. This appeal now challenges both the procedure followed by the court and its rulings sustaining the two conclusions on which the claims were held void.

*First,* plaintiffs argue that the district court erred in granting summary judgment. They contend that the court erroneously limited the scope of review, that there were genuine issues of material fact, that all the testimony must be reviewed and conflicts resolved, so that summary disposition under Rule 56, F.R.Civ.P., was error.

■ In this action for declaratory relief and for review under the Administrative Procedure Act, the principal issues are whether the administrative tribunal applied correct legal principles and whether its findings were supported by substantial evidence. 5 U.S.C.A. § 706(2)(E). See *Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 28 L.Ed.2d 136. Such review is confined to the agency record or such portions of it which the parties may cite, and additional evidence is not to be admitted. *Nickol v. United States,* supra, 501 F.2d at 1390. The reviewing court may set aside the administrative decision if it cannot conscientiously find that the evidence supporting the decision is substantial, when viewed in the light of the entire record, including the body of evidence opposed to the agency's view. See *Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 487–88, 71 S.Ct. 456, 95 L.Ed. 456.

■ We are convinced the district court fully complied with the procedural requirements of the *Nickol* case. The court's order was not one which merely sustained the agency summarily. The opinion shows that the court examined the facts in the record, evaluated the conflicts, and determined that the facts supported the elements making up the ultimate administrative decision. *Nickol,* supra at 1390–91. Regardless of the type of judgment entered, the opinion gives sufficient indication of the facts relied on from the administrative record to sustain the court's conclusion that the administrative decision was supported by substantial evidence. *Mandrell v. Weinberger,* 511 F.2d 1102, 1103 (10th Cir.). We thus find no procedural error in the disposition made.

*Second,* plaintiffs challenge the administrative ruling that their claims were void due to plaintiffs' failure to locate their claims in accordance with the mining laws.

The federal mining laws provide generally that valuable mineral deposits in Government lands shall be free and open to exploration and purchase, and the lands in which

they are found to occupation and purchase, by citizens "under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States." 30 U.S.C.A. § 22. The statute requires that the location must be distinctly marked on the ground so that its boundaries can be readily traced. See 30 U.S.C.A. § 28.

Plaintiffs' mining claims were located by Merle I. Zweifel. At the time he located the claims the federal regulation concerning the manner in which rights are initiated by location provided that a "location is made by staking the corners of the claim, posting notice of location thereon and complying with the State laws, regarding the recording of the location in the county recorder's office, discovery work, etc." 43 C.F.R. § 3401.1 (1969).[1] And the Colorado statute, C.R.S. 92–22–12(2) (1963), now C.R.S. 34–43–112 (1973), which should be observed in the location of placer mining claims, provided:

(a) Before filing [the] location certificate the discoverer shall locate his claim;

(b) By posting upon such claim a plain sign or notice, containing the name of the claim, the name of the locator, the date of discovery and the number of acres or feet claimed;

(c) By marking the surface boundaries with substantial posts, sunk into the ground, one at each angle of the claim.

Plaintiffs argue that State law location requirements do not apply in contest proceedings initiated by the United States, citing *Reins v. Murray,* 22 L.D. 409 (1896). It is true that the Secretary in *Reins* said the public surveys are permanent and fixed and that it is the statute's [30 U.S.C. § 28] intent that location of placer claims by legal subdivision makes marking of boundaries an idle ceremony not contemplated by the

law. See also Location of Oil Shale Placer Claims, Instructions, 52 L.D. 631 (1929). Nevertheless, as a result of 43 C.F.R. § 3401.1 the State location requirements did apply when Mr. Zweifel located these claims. In view of the federal regulation and the Colorado statute we cannot agree with the plaintiffs that the marking of the surface boundaries at each angle of the claim was not required to effect a valid location.

As the district court pointed out, 389 F.Supp. at 93–94, the Department has not required strict compliance with State location laws in every case, citing *Reins v. Murray,* supra. But substantial or colorable compliance with State location requirements has been enforced even in controversies between the Government and private claimants. *United States v. Zweifel,* 508 F.2d 1150, 1153–54 (10th Cir.).

The administrative law judge found that it was obvious from Zweifel's testimony and pictures that his efforts in addition to filing claim notices at the courthouse, were basically directed at posting notices or identification markers on groups of claims, not on individual claims. He found that Zweifel made no effort to establish individual claim corner monuments nor to ascertain whether the individual claims were in fact monumented by the public land surveys, that in fact simple arithmetic would reveal the impossibility of a person's being able to set foot and post a notice on each of the numerous claims within the time limits of Zweifel's activities, and that the finding was inescapable that Zweifel did not and could not post a notice on each and every claim. He thus concluded that the plaintiffs (contestees) did not establish possession over the claims as required by the general mining laws and that the claims are invalid (C.C.No. 441, 27).

The Board of Land Appeals affirmed, concluding that although Zweifel could

---

1. The present regulation relaxes the requirement on staking by providing that a "location is made (a) by staking the corners of the claim except placer claims described by legal subdivision *where State law permits* location without marking the boundaries of the claim on the ground . . . ." (43 C.F.R. § 3831.1). Colorado law does not so permit. (Emphasis added).

have properly staked, posted notice on and located some claims, the burden rests on plaintiffs to establish which claims were properly located, which burden they had not met; and that plaintiffs failed to comply with the federal law in location of their 2,910 claims and the claims are invalid (11 IBLA at 88).

■ In attacking the findings against them on the location procedures of Zweifel, plaintiffs make no persuasive argument on the record. In proceedings where the validity of mining claims on Government land is at issue the Government bears the burden of establishing prima facie the invalidity of the claims and then the burden shifts to the claimant to prove that his claims are valid. See *United States v. Zweifel,* supra, 508 F.2d at 1157. Here there was Government proof that the area resource managers never saw any of the notices Zweifel posted, although they could have been there (Tr. 328–29; 346–48; 351–54; 454–57; 465–68). This, coupled with admissions from Zweifel (Tr. 215–22), made a prima facie case of invalidity.

■ Arguing that validity of the claims was established, plaintiffs point to proof that Zweifel used several men in locating the claims and that by use of Y stakes each claim would be staked, and flags and location notices were posted on each claim (Tr. 864, et.seq.). And they argue that in any event where a claim is challenged by the Government, compliance with State law is not required (Reply Brief for Appellants, 25–31).

We cannot agree. State requirements have been held by us to apply in such controversies between the Government and mining claimants. See *United States v. Zweifel,* supra, 508 F.2d at 1153–54. Those requirements included the marking of surface boundaries at each angle of the claim. While at one point Zweifel asserted he did this (Tr. 188), he later testified that he had not posted the four corners of each claim (Tr. 215–22). We are satisfied that the record as a whole amply sustains the findings that the claims were not properly located.

In sum, we agree with the district court's view that the administrative findings of invalidity of the claims for lack of proper location are supported by substantial evidence.

*Third,* plaintiffs challenge the findings that they did not discover a valuable mineral in compliance with the mining laws. They argue that their claims in Piceance Creek Basin consist of valuable minerals—dawsonite, nachcolite, dolomite, ferroan; that the claims contain other alumina bearing compounds such as gibbsite, analcite and nordstrandite; that marketability is not required to be shown as to intrinsically valuable minerals such as gold, silver, alumina, uranium, etc.; and that it is sufficient as to them to show a general market, which was done for alumina (Reply Brief for Appellants, 12–16, 23).

The statute making mineral deposits in Government lands open to exploration and purchase refers only to "all valuable mineral deposits." 30 U.S.C.A. § 22. In interpreting the mining laws the Secretary has used a "prudent-man test" formulated in *Castle v. Womble,* 19 L.D. 455, 457 (1894):

> Where minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute are met.

The Supreme Court has approved the test for some time. See *United States v. Coleman,* 390 U.S. 599, 602, 88 S.Ct. 1327, 20 L.Ed.2d 170, and cases there cited.

In the *Coleman* case the Court sustained a determination by the Secretary that quartzite deposits did not qualify under the statute because the stone could not be marketed at a profit. This refinement, the marketability test, was commended. And the Court said that " . . . profitability is an important consideration in applying the prudent-man test . . . " Ibid.

Plaintiffs argue that they have shown the presence of alumina, an intrinsically valua-

ble mineral, and that *Coleman* recognizes that this showing satisfied the statute. Reliance is placed on this statement in *Coleman,* supra at 603, 88 S.Ct. at 1331:

> While it is true that the marketability test is usually the critical factor in cases involving non-metallic minerals of widespread occurrence, this is accounted for by the perfectly natural reason that precious metals which are in small supply and for which there is a great demand, sell at a price so high as to leave little room for doubt that they can be extracted and marketed at a profit.

■ We agree, however, with the district court's view that marketability at a profit remains an essential consideration in this case. We are persuaded that the Court's statement in *Coleman,* cited above, does not mean that marketability has no relevance where a discovery even of a precious metal is involved. See *Converse v. Udall,* 399 F.2d 616, 621 (9th Cir.). It is still proper here that the Secretary "take into account the economics of the situation." Id. at 622.

We are persuaded that the findings against plaintiffs are amply supported. There was expert Government testimony from Messrs. Jinks and Smith that alumina could not be profitably extracted at the time from deposits in the oil shale in the Basin (Tr. 499–507; 591–92; 628–29). Mr. Smith believed that a commercially feasible method can be developed in the future for extracting alumina from the compounds found in the shale, but he was not sure when such a process could be developed (Tr. 637–39, 694). And the plaintiffs' witness, Dr. Stevenson, testified that while alumina had been extracted from dawsonite in laboratory experiments, it was beyond his field whether one of the processes could be used commercially (Tr. 819–20).

■ Data cited by plaintiffs in publications after the hearings are similarly unpersuasive. They were based on studies and economic conditions several years after the location of these claims (See Plaintiffs' Ex. 3, Appendix). The required showing by a claimant, however, is that at the time of discovery there is a market sufficiently

profitable to attract the efforts of a person of ordinary prudence. *Barrows v. Hickel,* 447 F.2d 80, 83 (9th Cir.).

■ Again considering the record as a whole we are satisfied that the findings against plaintiffs are supported by substantial evidence in the administrative record. We sustain the ruling that the claims were void for failure to establish discovery of minerals satisfying the marketability test.

*Last,* we will treat several remaining claims of error unrelated to the major issues we have covered:

Plaintiffs argue that the contest proceeding brought by the Government was barred by the doctrine of laches (Brief for Appellants, 4). It was argued to the Interior Board of Land Appeals that the Government should have acted by earlier proceedings when it learned that vast numbers of location notices were being filed in the Basin and that failure to do so precluded the later proceedings. The argument was rejected by the Board (11 IBLA at 97–98).

No further particulars are shown going to lack of diligence by the Government nor of any prejudice to plaintiffs resulting from delay in commencement of the contest proceeding. The administrative record shows that the claims in question were filed beginning in May, 1966 and extending until February, 1967, and that the contest proceeding was not commenced until issuance of a complaint dated August 7, 1968 (C.C.No. 441, 1–2).

■ We start with the general rule that ". . . the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights." *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283; *Board of Commissioners v. United States,* 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313. But even assuming some relaxation of these strict rules might be developing, there are no circumstances shown here to support the defense of laches. It is an affirmative defense requiring a showing of lack of diligence by a plaintiff and prejudice to the defendant. *Costello v.*

United States, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551; *Bradley v. Laird,* 449 F.2d 898, 902 (10th Cir.). We cannot say the Government was precluded from asserting its rights here. See *United States v. California,* 332 U.S. 19, 39–40, 67 S.Ct. 1658, 91 L.Ed. 1889.

Further, plaintiffs argue that they were prejudiced by unfair publicity by the Secretary concerning their claims making it impossible that they have a fair hearing. In particular they complain of unfairness in the decision of the Secretary himself acting through the Interior Board of Land Appeals (Reply Brief of Appellants, 36–37). They point to publication of statements by the Department that it had "wiped out" more than 5,000 mining claims on oil rich shale lands in Colorado and Utah (Reply Brief of Appellants, 36, and Contestee's Ex. A).

▬ An adjudicatory hearing before an administrative tribunal must afford a fair trial in a fair tribunal as a basic requirement of due process. *Withrow v. Larkin,* 421 U.S. 35, 46–47, 95 S.Ct. 1456, 45 L.Ed.2d 712; *Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 36 L.Ed.2d 488; *Amos Treat & Co. v. SEC,* 113 U.S.App.D.C. 100, 306 F.2d 260. However, a substantial showing of personal bias is required to disqualify a hearing officer or to obtain a ruling that the hearing is unfair. *Converse v. Udall,* 262 F.Supp. 583, 590 (D.Or.), aff'd 399 F.2d 616 (9th Cir.), cert. denied, 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 569. No such showing is made in this record. The administrative law judge indicated that he was unaware of any adverse prehearing publicity concerning these claims before it was mentioned by plaintiffs (contestees) (Tr. 6–23). Thus there is no showing that the statements tainted his determinations. *FTC v. Cinderella Career and Finishing Schools, Inc.,* 131 U.S.App.D.C. 331, 404 F.2d 1308, 1315. As to the Board and the Secretary, we feel that the statements show no deprivation of due process. The material cited does not demonstrate a prejudgment on the merits of the issues in these contest proceedings. *Environmental Defense Fund Inc. v. Environmental Protection Agency,* 167 U.S.App.D.C. 71, 510 F.2d 1292, 1305; *Kennecott Copper Corporation v. FTC,* 467 F.2d 67, 79–80 (10th Cir.).

Additional arguments of administrative error seem insubstantial to us and require no further discussion. We agree with the decision of the district court upholding the administrative rulings and the judgment is

AFFIRMED.